**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRANDI F. RAMUNDO, On Behalf of Herself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br> v.<br><br>MICHAELS STORES, INC., a Delaware corporation,<br><br>        Defendant. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Brandi F. Ramundo ("Plaintiff"), by her attorneys, brings this action against Defendant Michaels Stores, Inc. ("Defendant" or "Michaels"), on behalf of herself and all others similarly situated. Plaintiff makes the following allegations upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge, as follows:

**NATURE OF THE ACTION**

1. Plaintiff Brandi F. Ramundo brings this class action complaint against Michaels for failing to secure and safeguard its customers' personal financial data, including credit and debit card information and PIN numbers.

2. Michaels knowingly violated federal and state law by failing to take commercially reasonable steps to protect Plaintiff's and class members' personal financial information. Michaels' lack of adequate security granted easy access to third-parties who tampered with in-store PIN pads to "skim" unwitting customers' debit and credit card information and subsequently steal money directly from the victims' bank accounts. In essence, Michaels'

security failure enabled cyber-pickpockets to steal customer financial data from within the retailer's stores and subsequently loot the customers' bank accounts from remote automated teller machines ("ATMs").

3. Like many other retailers, Michaels uses PIN pads to process its customers' in-store debit and credit card payments. A PIN pad is an electronic device used in a debit or credit card-based transaction to input and encrypt the cardholder's personal identification number, or PIN. PIN pads are normally used with integrated point of sale devices in which an electronic cash register is responsible for taking the sale amount and initiating/handling the transaction. The PIN pad is required so that the customer card can be accessed and the PIN can be securely entered, stored and encrypted before it is sent to the transaction manager or the bank for verification.

4. Michaels failed to employ commercially reasonable security measures, like ensuring the physical security of its checkout line terminals and inspecting and testing its payment processing equipment, to protect customers' debit and credit card information during in-store purchases using PIN pads. Michaels' knowing and willful failure to secure its customers' debit and credit card information led to a security breach that exposed the financial data and bank account balances of customers who shopped at 80 Michaels stores across 20 states between February 8, 2011 and May 6, 2011.

5. On May 5, 2011, almost three months after the skimming scheme began, Michaels sent a belated Customer Security Alert to some of its customers via email (the "email Alert"). The email Alert was signed by Michaels' Chief Executive Officer, John B. Menzer. It began, "Michaels has just learned that it may have been a victim of PIN pad tampering in the Chicago area and that customer credit and debit card information may have been compromised." (emphasis supplied). The email Alert then urged customers to "protect themselves" by

"immediately contacting [their] bank and/or credit card company to check for and report any unauthorized charges, as well as seek their advice on how to protect [their] account in the event that [their] information has been taken." Based on the email Alert, Michaels apparently expects its victimized consumers to bear the fallout from its security breach, thereby thrusting upon the consumers a continuous burden of monitoring their bank accounts and credit histories.

6.     Michaels failed to send the email Alert to all of its customers, including Plaintiff, and it did not otherwise pursue commercially reasonable measures to notify its customers about the security breach. In any event, Michaels' email Alert failed to provide timely and clear notification to anyone, thereby preventing customers from taking meaningful, proactive steps to secure their financial data and bank accounts.

7.     In failing to provide adequate data security and timely notice of the security breach, Defendant violated federal and Illinois consumer protection statues.

## PARTIES

8.     Plaintiff Brandi F. Ramundo is a citizen of Illinois who resides in West Chicago, Illinois. On or about April 18, 2011, Plaintiff used her Fifth Third Bank debit card to purchase merchandise in the amount of $19.35 from the Michaels store in Bloomingdale, Illinois. Plaintiff swiped her debit card through one of the tampered Michaels PIN pads and unwittingly had her debit card information and PIN number stolen as a result. On Tuesday, May 3, 2011, Plaintiff's Fifth Third Bank debit card was rejected when she tried to use it to purchase merchandise at a local Costco store. Immediately thereafter, Plaintiff telephoned Fifth Third Bank about her debit card and was told by the bank representative that the debit card was suspended because of suspicious activity in connection with the linked checking account. Namely, the bank representative informed Plaintiff about three unauthorized withdrawals from the checking account that was linked to the debit card she used at the Michaels store in

Bloomingdale. The first unauthorized withdrawal occurred on May 2, 2011 at an ATM located in Los Angeles, California in the amount of $303.00. The second unauthorized withdrawal occurred on May 3, 2011 at an ATM located in Woodland Hills, California in the amount of $503.00. The third unauthorized withdrawal occurred on May 3, 2011 at an ATM located in Los Angeles, California in the amount of $503.00. Later that day, Plaintiff reported the theft to her local police precinct and learned from the law enforcement agents that her debit card information had been "skimmed" from Michaels, like numerous other consumers who filed complaints. Plaintiff never received any alert or notification about the security breach from Michaels.

9.      Defendant, Michaels Stores, Inc. is a Delaware corporation with its principal place of business in Irving, Texas. Defendant is North America's largest specialty arts and crafts retailer with more than 964 stores located in the United States.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from the state of the Defendant.

11.     This Court has personal jurisdiction over Defendant because Defendant is registered with the Illinois Secretary of State to conduct business in Illinois, and Defendant conducts substantial business in Illinois, such that Defendant has significant continuous and pervasive contacts with the State of Illinois. Defendant also maintains stores and employees in Illinois.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims enumerated herein occurred in this judicial district.

## **FACTS**

### **"Skimming"**

13.     Skimming is the unauthorized capture of debit and/or credit card magnetic strip data.  Magnetic strip technology can be duplicated easily, making it quick and simple for crooks to assume a victim's identity.

14.     Skimming can occur during routine ATM or payment transactions.  One of the most common methods for thieves to steal PIN pad information is by using a "skimmer."  These devices are typically constructed with easily obtainable electronic parts.

15.     First, thieves use false card readers combined with hidden wireless cameras or electronic membranes placed over the PIN keypads to capture a victim's card information and PIN numbers.  Second, the captured information is then transmitted to the thieves, who may sell the information online or use it to create a bogus duplicate card.  Creating duplicate cards takes only seconds using a card cloning machine that can be purchased online.  Finally, low-level crooks called "cashers" use the bogus card—complete with stolen PIN—to withdraw cash directly from the victim's bank accounts via ATMs.

16.     According to the Electronic Funds Transfer Association, theft from ATM skimming exceeds $1 billion annually.  The below illustration from a <u>Wall Street Journal</u> article entitled "Thieves Swipe Debit Card Data," dated May 13, 2011, demonstrates the steps involved in skimming debit card information:



**Michaels' Skimming Scam**

17.     Michaels failed to take commercially reasonable steps to safeguard customer financial information.  Michaels did not employ appropriate technical, administrative or physical procedures to protect customer financial information from unauthorized capture, dissemination or misuse, thereby making its consumers an easy target for third-party skimmers.

18.     Michaels admitted that PIN pads at its stores in 20 states were fitted with skimming devices.

19.     The security breach affected checkout line terminals at stores in Illinois, Colorado, Delaware, Georgia, Iowa, Massachusetts, Maryland, North Carolina, New Hampshire, New Jersey, New Mexico, Nevada, New York, Ohio, Oregon, Pennsylvania, Rhode Island, Utah, Virginia and Washington.

20.     Michaels' payment processing equipment was tampered with as early as February 8, 2011, and upon information and belief, the contaminated equipment was used by consumers in Michaels' stores until May 6, 2011.  To date, approximately 90 PIN pads from Michaels' 964 United States stores showed signs of tampering.

21.     Upon information and belief, during the weekend of April 30 – May 1, 2011, class members complained to local law enforcement authorities in the greater Chicago area about unauthorized withdrawals from their bank accounts in connection with use of a debit card while shopping at Michaels stores.

22.     Michaels first notified some of its customers about the security breach on May 5, 2011 through the email Alert.  Upon information and belief, Michaels knew of the security breach prior to May 5, 2011.  However, Michaels failed to take immediate action to prevent the further dissemination of consumer financial information and theft of consumer bank account funds.

23.     In response to the theft, Michaels customer service representatives are merely urging class members to "watch [their] account" and "inform [their] bank or card company and the authorities of any unauthorized activity."  Thus, Michaels is placing the burden on aggrieved customers, like Plaintiff, either to self-monitor their accounts and credit reports for years to come, or to purchase professional credit monitoring services in the wake of the security breach and theft.  At no time has Michaels offered any credit monitoring assistance to Plaintiff.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff seeks to represent a class defined as:

> All persons residing in the United States who made an in-store purchase at a Michaels store in the United States using a debit or credit card that was swiped through a PIN pad at any time from January 1, 2011 through present (the "Class").

Excluded from this Class are Defendant's affiliates, parents, subsidiaries, employees, officers, agents, and directors.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

25.     Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, there are thousands of Michaels customers who

suffered a loss of money and breach of security. Class members may be notified of the pendency of this action by mail, email and/or publication.

26.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

a.  Whether Defendant failed to use reasonable care and commercially reasonable methods to secure and safeguard its customers' sensitive financial information.

b.  Whether Defendant properly implemented its purported security measures to protect customer financial information from unauthorized capture, dissemination and misuse.

c.  Whether Defendant took reasonable measures to determine the extent of the security breach after it first learned of same.

d.  Whether Defendant's delay in informing consumers of the security breach was unreasonable.

e.  Whether Defendant's method of informing consumers of the security breach and its description of the breach and potential exposure to damages as a result of same was unreasonable.

f.  Whether Defendants' conduct violates the Stored Communications Act, 18 U.S.C. § 2702.

g.  Whether Defendant's conduct violates 815 ILL. COMP. STAT. 505/1, *et seq.*

h.  Whether Defendant's conduct constitutes negligence or negligence per se.

i.  Whether Plaintiff and the Class members are entitled to damages, injunctive relief or other equitable relief.

27.     Plaintiff's claims are typical of the claims of the proposed Class. Each Class member was subjected to the same illegal conduct, was harmed in the same way and has claims for relief under the same legal theories.

28.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

29.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I - Violation of the Federal Stored Communications Act, 18 U.S.C. § 2702

30-58. Plaintiff hereby repeats, realleges and incorporates paragraphs 1-29 in this Complaint as if fully set forth herein as paragraphs 30-58 of Count I.

59.     This first claim for relief is brought against Defendant by Plaintiff individually, and on behalf of the Class.

60.     The Stored Communications Act ("SCA") contains provisions that provide consumers with redress if a company mishandles their electronically stored information.  The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information." S.Rep. No. 99-541, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, at 3557.

61.     Section 2702(a)(1) of the SCA provides "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service."  18 U.S.C. § 2702(a)(1).

62.     The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id.* at § 2510(15).

63.     Through its payment processing equipment (including its PIN pads), Defendant provides an "electronic communication service to the public" within the meaning of the SCA because it provides consumers at large with credit and debit card payment processing capability that enables consumers to send or receive wire or electronic communications concerning their account data and PINs to transaction managers, card companies or banks.

64.     By failing to take commercially reasonable steps to safeguard sensitive consumer financial data, Michaels has knowingly divulged customer credit and debit card account information and PINs that were communicated to financial institutions solely for the customer's payment verification purposes, while in electronic storage in Michaels' PIN pads.

65.     Section 2702(a)(2)(A) of the SCA provides "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service on behalf of, and received

by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service." 18 U.S.C. § 2702(a)(2)(A)

66.    The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communications system." 18 U.S.C. § 2711(2).

67.    An "electronic communications system" is defined by the SCA as "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(14).

68.    Michaels provides remote computing services to the public by virtue of its computer processing services for consumer credit and debit card payments, which are used by customers and carried out by means of an electronic communications system, namely the use of wire, electromagnetic, photooptical or photoelectric facilities for the transmission of wire or electronic communications received from, and on behalf of, the customer concerning customer financial information, and the use of PIN pads for the electronic storage of such communications during the payment verification process.

69.    By failing to take commercially reasonable steps to safeguard sensitive consumer financial data, Michaels has knowingly divulged customer credit and debit card account information and PINs that were carried and maintained on Michaels' remote computing service solely for the customer's payment verification purposes.

70.    As a result of Defendants' conduct described herein and its violations of § 2702(a)(1) and (2)(A), Plaintiff and Class members have suffered injuries, including lost money and the costs associated with the need for vigilant credit monitoring to protect against additional

identity theft. Plaintiff, on her own behalf and on behalf of the Class, seeks an order awarding herself and the Class the maximum statutory damages available under 18 U.S.C.§ 2707 in addition to the cost for 3 years of credit monitoring services.

### COUNT II - Violation of the Illinois Consumer Fraud and Deceptive Practices Act,815 Ill. Comp. Stat. 505/1, *et seq.*

71-99. Plaintiff hereby repeats, realleges and incorporates paragraphs 1-29 in this Complaint as if fully set forth herein as paragraphs 71-99 of Count II.

100. This second claim for relief is brought against Defendant by Plaintiff individually, and on behalf of the Class.

101. Defendant violated 815 ILL. COMP. STAT. 505/2 by failing to properly implement adequate, commercially reasonable security measures to protect their private financial information.

102. Defendant also violated 815 ILL. COMP. STAT. 505/2 by failing to immediately notify affected customers of the nature and extent of the security breach.

103. These fraudulent and deceptive omissions of Defendant were intended to induce Plaintiff's and the Class members' reliance on the misinformation that their financial information was secure and protected when using debit and credit cards to shop at Michaels.

104. Plaintiff and Class members were deceived by Defendant's failure to properly implement adequate, commercially reasonable security measures to protect their private financial information while shopping at Michaels.

105. Plaintiff and Class members have suffered injury in fact and lost money and property as a result of these violations of 815 ILL. COMP. STAT. 505/2.

106. Plaintiff's and the Class' injuries were proximately caused by Defendant's fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others.

107. Pursuant to 815 ILL. COMP. STAT. 505/7 and 10a, Plaintiff seeks an order requiring Defendant to:

1. pay monetary and punitive damages for the conduct described herein;

2. pay for 3 years of credit card fraud monitoring services for Plaintiff and members of the Class; and

3. pay Plaintiff's reasonable attorneys' fees and costs of suit.

## COUNT III – Negligence

108-136. Plaintiff hereby repeats, realleges and incorporates paragraphs 1-29 in this Complaint as if fully set forth herein as paragraphs 108-136 of Count III.

137. This third claim for relief is brought against Defendant by Plaintiff individually, and on behalf of the Class.

138. By agreeing to accept Plaintiff's and Class members' non-public financial information through its payment processing services, Defendant assumed a fiduciary duty, which required it to exercise reasonable care to secure and safeguard that information and to utilize commercially reasonable methods to do so.

139. Defendants breached their duty of care by failing to provide adequate security, and failing to protect Plaintiff's and Class members' financial data from being captured, accessed, disseminated and misused by a third party.

140. Defendants also breached their duty of care by failing to provide prompt and clear notification to Plaintiff and members of the Class that their financial data had been compromised.

141. As a direct and proximate result of Defendants' failure to exercise reasonable care and use commercially reasonable security measures, Defendant made Plaintiff and other Class

members into targets for identity theft, and Plaintiff's and the Class' financial information and bank account monies were, in fact, stolen when skimmers tampered with Defendant's PIN pads.

142.　As a direct and proximate result of Defendant's misconduct described herein, Plaintiff and Class members were injured because they suffered theft of money and sensitive financial information, and they incurred the additional costs associated with increased risk of identity theft, all of which have ascertainable value to be proven at trial.

143.　Plaintiff and members of the Class have suffered injury in fact, including money damages, and will continue to incur damages as a result such negligence.

## COUNT IV – Negligence Per Se

144-171.　Plaintiff hereby repeats, realleges incorporates paragraphs 1-29 in this Complaint as if fully set forth herein as paragraphs 144-171 of Count IV.

172.　This fourth claim for relief is brought against Defendant by Plaintiff individually, and on behalf of the Class.

173.　Defendants' violations of the Stored Communications Act, 18 U.S.C. § 2702 and 815 ILL. COMP. STAT. 505/1, *et seq.*, resulted in injury to Plaintiff and the Class.

174.　The harm Defendants caused to Plaintiff and the Class resulted from the type of occurrences those statutes were designed to prevent.

175.　Plaintiff and the Class are the type of persons for whose protection those statutes were adopted.

176.　Defendant's violations of the foregoing statutes as described herein resulted in injury to Plaintiff and Class members. Plaintiff and the Class members suffered theft of money and sensitive financial information, and they incurred the additional costs associated with increased risk of identity theft, all of which have ascertainable value to be proven at trial.

## COUNT V – Breach of Implied Contract

177-205.     Plaintiff hereby repeats, realleges and incorporates paragraphs 1-29 in this complaint as if fully set forth herein as paragraphs 177-205 of Count V.

206.     This fifth claim for relief is brought against Defendant by Plaintiff individually, and on behalf of the Class.

207.     Michaels customers who were interested in making in-store purchases with debit or credit cards were required to provide their card's magnetic strip data and PINs for payment verification.

208.     In providing such financial data, Plaintiff and members of the Class entered into an implied contract with Defendant whereby Defendant became obligated to reasonably safeguard the sensitive, non-public information.

209.     Under the implied contract, Defendant was obligated to not only safeguard customer financial information, but also to provide customers with prompt, adequate notice of any security breach or unauthorized access of said information.

210.     Defendant breached the implied contract with Plaintiff and members of the Class by failing to take reasonable measures to safeguard customer financial data.

211.     Defendant also breached its implied contract with Plaintiff and Class members by failing to provide prompt, adequate notice of the security breach and unauthorized access of customer financial information by third-party skimmers.

212.     Plaintiff and Class members suffered and will continue to suffer damages including, but not limited to loss of their financial information, loss of money and costs incurred as a result of increased risk of identity theft, all of which have ascertainable value to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the proposed Class, prays:
(a) for all forms of relief set forth above, (b) for an order certifying the proposed Class and
appointing Plaintiff and her undersigned counsel of record to represent the proposed Class, (c)
for actual damages, (d) for compensatory damages, (e) for consequential and statutory damages,
(f) for an order requiring Defendants to immediately pay for credit card fraud monitoring
services for Plaintiff and members of the Class, (g) punitive damages, (h) for costs of suit herein,
(i) for both pre- and post-judgment interest on any amounts awarded, (j) for payment of
reasonable attorneys' fees, and (k) for such other and further relief as the Court may deem
proper.

## DEMAND FOR JURY TRIAL

Dated: May 18, 2011

Respectfully submitted,

By: s/ Harry O. Channon
  Mark D. Belongia (ARDC#6269391)
  Harry O. Channon (ARDC #6282644)
  **Belongia Shapiro & Franklin LLP**
  20 S. Clark Street, Suite 300
  Chicago, IL 60603
  Tel: 312-662-1030
  Fax: 312-662-1040


  Scott A. Bursor
  Joseph I Marchese
  **Bursor & Fisher, P.A.**
  369 Lexington Ave., Floor 10
  New York, NY 10017
  Tel: 212-989-1515
  Fax: 212-989-9163

  Attorneys for Plaintiff