**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE MICHAELS STORES PIN PAD LITIGATION<br><br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br><br>This Documents Relates to All Actions | Case No. 1:11-cv-03350<br><br><u>CLASS ACTION</u><br><br>Honorable Charles P. Kocoras |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.    STATEMENT OF FACTS ............................................................................. 3

    A.    Factual Background And Procedural History ........................................ 3

    B.    Reasons For Settlement............................................................... 5

    C.    Terms Of The Proposed Settlement ................................................. 6

    D.    Class Notice ........................................................................... 8

III.   ARGUMENT ........................................................................................ 9

THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, CONDITIONALLY CERTIFY THE SETTLEMENT CLASS, APPOINT PLAINTIFFS AS CLASS REPRESENTATIVES, APPROVE THE PROPOSED NOTICE TO CLASS MEMBERS, AND SCHEDULE A FAIRNESS HEARING........................................... 9

    A.    Legal Principles Governing Preliminary Approval ............................... 9

    B.    The Seventh Circuit's Standards Governing Class Action Settlements ............... 10

        1.    The Strength Of Plaintiffs' Case Measured Against The Settlement ....... 12

        2.    The Complexity, Length, And Expense Of Continued Litigation If The Settlement Is Not Approved.................................................... 15

        3.    The Amount Of Opposition To The Settlement ....................................... 15

        4.    The Presence Of Collusion In Gaining A Settlement .............................. 16

        5.    The Stage Of The Proceedings And The Amount Of Discovery And Investigation Completed When Settlement Was Achieved ..................... 16

    C.    Conditional Certification Of The Class Under Rule 23(b)(3) For Settlement Purposes Is Appropriate.......................................................... 17

        1.    The Settlement Class Satisfies Rule 23(a) ............................... 18

            a)    Numerosity........................................................... 19

            b)    Commonality......................................................... 19

            c)    Typicality .......................................................... 20

            d)    Adequacy ............................................................ 20

i

2.     The Settlement Class Meets The Requirements Of Rule 23(b)(3). .......... 22

     a)     Predominance................................................................................... 22

     b)     Superiority........................................................................................ 23

D.     The Proposed Class Notice Is Adequate ................................................ 23

IV.     CONCLUSION ....................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Michaels Stores, Inc.,*
No. 1:11-cv-3579 ....................................................................................................3, 4

*Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.,*
235 F. Supp. 2d 816 (N.D. Ill. 2002) ...................................................................11

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)..............................................................................................17

*Armstrong v. Bd of Sch. Directors of the City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ...................................................................9, 10, 16

*Cannon v. Texas Gulf Sulphur Co.,*
55 F.R.D. 308 (S.D.N.Y. 1969) ............................................................................12

*Carson v. American Brands, Inc.,*
450 U.S. 79 (1981)................................................................................................10

*Chandler v. Sw. Jeep-Eagle, Inc.,*
162 F.R.D. 302 (N.D. Ill. 1995)...........................................................................19

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995)...................................................................................19

*Culver v. City of Milwaukee,*
277 F.3d 908 (7th Cir. 2002) ...............................................................................21

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
89 F.R.D. 87 (S.D.N.Y. 1981) ..............................................................................22

*Ebersohl v. Bechtel Corp.,*
2010 WL 2266736 (S.D. Ill. June 7, 2010)..........................................................21

*EEOC v. Hiram Walker & Sons, Inc.,*
768 F.2d 884 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986)............10, 11, 14

*Gautreaux v. Pierce,*
690 F.2d 616 (7th Cir. 1982) .......................................................................2, 9, 11

*General Elec. Capital Corp. v. Lease Resolution Corp.,*
128 F.3d 1074 (7th Cir. 1997) .............................................................................11

iii

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 855 F. Supp. 825 (E.D.N.C. 1994)........................................................................10

*In re Am. Med. Sys., Inc.*,
 75 F.3d 1069 (6th Cir. 1996) ................................................................................19

*In re Bank One Sec. Litig./Chicago S'holder Claims*,
 00 CV 0767, 2002 U.S. Dist. LEXIS 8709 (N.D. Ill. May 9, 2002)......................19

*In re Bromine Antitrust Litig*,
 203 F.R.D. 403 (S.D. Ind. 2001)...........................................................................10

*In re Cendant Corp. Secs. Litig.*,
 109 F. Supp. 2d 235 (D.N.J. 2000) ........................................................................12

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*,
 410 F. Supp. 659 (D. Minn. 1974).........................................................................12

*In re Michaels Stores Pin Pad Litigation*,
 Case No. 1:11-cv-03350 ..........................................................................................4

*In re Northfield Labs., Inc. Secs. Litig.*,
 Case No. 06-1493, 2012 U.S. Dist. LEXIS 88667 (N.D. Ill. June 26, 2012) .........21

*In re RJR Nabisco, Inc. Secs. Litig.*,
 No. MDL No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992)..........12

*Isby v. Bayh*,
 75 F.3d 1191 (7th Cir. 1996) ....................................................................... passim

*Mars Steel v. Continental Ill. Nat'l Bank & Trust*,
 834 F.2d 677 (7th Cir. 1987) .................................................................................16

*Mashburn v. Nat'l Healthcare Inc.*,
 684 F. Supp. 660 (M.D. Ala. 1988) .......................................................................24

*McDaniel v. Univ. Fid. Corp.*,
 No. 04 C 2157, 2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 20, 2004) ...............17

*Mullane v. Central Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950)...............................................................................................25

*Pella Corp. v. Saltzman*,
 606 F.3d 391 (7th Cir. 2010) .................................................................................22

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985)................................................................................................23

*Ramundo v. Michaels Stores, Inc.,*
No. 1:11-cv-3350 ..................................................................................................3, 4

*Rosario v. Livaditis,*
963 F.2d 1013 (7th Cir. 1992) .........................................................................19, 20

*Rosenfeld and Soffer v. Michaels Stores, Inc.,*
No. 1:11-cv-6335 .........................................................................................................4

*Sec'y of Labor v. Fitzsimmons,*
805 F.2d 682 (7th Cir. 1986) (*en banc*) ...................................................................20

*Sherry v. Michaels Stores, Inc.,*
No. 1:11-cv-5900 .........................................................................................................4

*Siprut v. Michaels Stores, Inc.,*
No. 1:11-cv-3725 .........................................................................................................4

*Williams v. First Nat'l Bank of Pauls Valley,*
216 U.S. 582 (1910)......................................................................................................9

*Williams v. Michaels Stores, Inc.,*
No. 1:11-cv-3883 .........................................................................................................4

*Wilson v. Michaels Stores, Inc.,*
No. 1:12-cv-1863 .........................................................................................................4

## STATUTES

Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ................................................5

Fed. R. Civ. P. 23 (a) ........................................................................................... passim

Fed. R. Civ. P. 23 (b) ........................................................................................... passim

Fed. R. Civ. P. 23 (c) ........................................................................................... passim

Fed. R. Civ. P. 23 (e) ........................................................................................... passim

## OTHER AUTHORITIES

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
Procedure § 1778, at 528 (2d ed. 1986) ...............................................................22

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, § 11.27. (3d ed. 1992).............17

3B J.W. Moore, Moore's Federal Practice (2d ed. 1996) ¶ 23.80[2.-1] at 23-479 .......................10

## I. PRELIMINARY STATEMENT

Plaintiffs Mary Allen, Kelly M. Maucieri, Brandi Ramundo, Adrianna Sierra, Sara Rosenfeld, Ilana Sofer, Lori Wilson, Jeremy Williams, and Kimberly M. Siprut (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Settlement Class"), respectfully submit this Memorandum in support of the parties' Joint Motion for Preliminary Approval of Class Action Settlement ("Joint Motion") of a proposed class settlement (the "Settlement"), the terms of which are set forth in a Settlement Agreement dated December 7, 2012 (the "Settlement Agreement"), a copy of which is attached as Exhibit 1 thereto.

Defendant Michaels Stores, Inc. ("Michaels" or "Defendant") is the largest specialty arts and crafts retailer in the United States with more than 964 stores nationwide. Between January 1, 2011 and May 12, 2011 (the "Class Period"), unauthorized persons known as "skimmers" tampered with PIN Pads terminals in eighty-six separate Michaels retail store locations in nineteen states (the "Compromise"). As a result of the Compromise, the skimmers were able to capture Settlement Class members' debit and credit card information, and, in some instances, were able to use that information to steal money from Settlement Class members' bank accounts.

Plaintiffs sued Michaels alleging that Michaels' inadequate security practices allowed the Compromise to take place. Michaels denies the allegations and believes it has substantial defenses against Plaintiffs' claims. Plaintiffs sought two basic remedies through their suit: (1) compensation for the damages they and the other members of the Settlement Class sustained as a result of the Compromise, and (2) verification of improvements to Michaels' security practices related to PIN Pad security. Following eighteen months of litigation and arms-length negotiation between the parties, Plaintiffs were able to achieve both of these ends through the Settlement, as memorialized in the Settlement Agreement.

The Settlement provides direct and immediate benefits to the Settlement Class. As a result of the Settlement, Michaels will provide Settlement Class Members with (1) notice of the Compromise; (2) monetary reimbursement for qualifying unreimbursed out-of pocket monetary losses sustained in connection with the Compromise; (3) a period of credit monitoring paid for by Michaels; and (4) verification of certain security improvements undertaken by Michaels with respect to PIN Pad security since the Compromise. In exchange, Plaintiffs and the Settlement Class will provide Michaels with a general release.

This relief represents a meaningful recovery of real value for the Settlement Class Members which has been achieved at a stage in the litigation when class members can still benefit from the proposed relief. The Settlement was reached after a comprehensive investigation led by Class Counsel that included consultation with data security experts, aggressive motion practice, and months of arm's-length, good faith negotiations among the parties, including a formal mediation session before the late Hon. Nicholas H. Politan (Ret.).

Federal courts favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). With this principle in mind, the parties ask the Court to take the first step in resolving this case – preliminarily approving the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. As the Seventh Circuit has explained, the purpose of this "first step" is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing" after class members have been given an opportunity to opt-out of the class or to voice any objections to the settlement. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see generally* Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010) ("Manual").

The proposed Settlement was reached after vigorous, arm's-length negotiations among experienced counsel for both Plaintiffs and Defendant. It is an excellent compromise in light of the merits of Plaintiffs' claims and Michaels' defenses, the factual and legal risks of continued litigation through trial and a possible appeal, and the results it achieves. The Settlement represents a highly favorable result for the Settlement Class, and therefore meets the test for preliminary approval.

For the reasons set forth above and explained in more detail below, Plaintiffs respectfully request that the Court enter an Order, substantially in the form attached as Exhibit A to the Settlement Agreement: (1) preliminarily approving the Settlement Agreement and entering the [Proposed] Order Granting Preliminary Approval to Proposed Class Settlement attached as Exhibit A thereto; (2) preliminarily certifying the Settlement Class; (3) approving the proposed form and method of providing notice of the pendency of this action and the Settlement to the Settlement Class and directing that notice be provided to the Settlement Class members; (4) scheduling a Fairness Hearing at which the Court can consider the request for final approval of the Settlement and entry of a proposed order and final judgment and setting forth procedures and deadlines related thereto; and (5) issuing such other related relief as just and proper.

## II.     STATEMENT OF FACTS

### A.     Factual Background and Procedural History

The first-filed action against Michaels in connection with the Compromise was commenced by Plaintiff Brandi Ramundo on May 18, 2011 in the United States District Court for the Northern District of Illinois and styled, *Ramundo v. Michaels Stores, Inc.,* No. 1:11-cv-3350 (the "Ramundo Action"). The Consolidated Action consists of the following actions filed against Michaels in connection with the Compromise: (1) the *Ramundo* Action; (2) *Allen v. Michaels Stores, Inc.,* No. 1:11-cv-3579 (the "*Allen* Action"); (3) *Siprut v. Michaels Stores, Inc.,*

No. 1:11-cv-3725 (the "*Siprut* Action"); (4) *Williams v. Michaels Stores, Inc.,* No. 1:11-cv-3883 (the "*Williams* Action"); (5) *Sherry v. Michaels Stores, Inc.,* No. 1:11-cv-5900 (the "*Sherry* Action"); (6) *Rosenfeld and Soffer v. Michaels Stores, Inc.,* No. 1:11-cv-6335 (the "*Rosenfeld* Action"); (7) *Wilson v. Michaels Stores, Inc.,* No. 1:12-cv-1863 (the "*Wilson* Action").

On June 8, 2011, pursuant to an order entered by this Court, the *Ramundo*, *Allen* and *Siprut* Actions were consolidated and captioned *In re Michaels Stores Pin Pad Litigation,* Case No. 1:11-cv-03350. (Dkt. No. 20). This Court also appointed Faruqi and Faruqi, LLP, Bursor and Fisher, P.A., and Wolf Haldenstein Adler Freeman and Herz, LLC as interim co-lead class counsel. *Id.* The *Williams*, *Sherry*, *Rosenfeld,* and *Wilson* Actions were subsequently related to and consolidated with the Consolidated Action. (Dkt. Nos. 18, 49, 68).

On July 8, 2011, Class Counsel filed their Consolidated Amended Class Action Complaint ("Complaint"). The Complaint alleged details, based on facts known at the time, regarding the extent of the Compromise and asserted claims for breach of contract, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, violation of the Federal Stored Communications Act, Negligence, Negligence Per Se, and Breach of Implied Contract. *Id.* ¶¶ 73-125. The Complaint sought a judgment that would force Michaels to disseminate notice of the Compromise to all Class members and pay for Class members' credit monitoring services, restitution, damages, interest, and attorneys' fees and costs. *Id.* at 29-30. The Complaint was brought on behalf of both a nationwide class and an Illinois residents' subclass (the "Illinois Subclass"). *Id.* ¶¶ 62-72.[1]

On August 8, 2011, Michaels filed its motion to dismiss the Complaint. (Dkt. No. 34). By order dated November 23, 2011, the Court denied the motion with respect to the Illinois

---

[1] The *Rosenfeld*, *Sherry*, and *Wilson* Actions each asserted claims under other states' laws. The Settlement agreement resolves all claims nationwide.

consumer fraud and implied breach of contract claims and granted the motion with respect to Plaintiffs' claims under the SCA and for negligence and negligence per se.

On February 8, 2012, the parties participated in a full-day mediation session with the late Hon. Nicholas H. Politan (Ret.). With Judge Politan's assistance, the parties began the process of agreeing upon the terms of a meaningful settlement.

As a result of this extensive investigation and the extensive negotiations, the parties finalized the Settlement and executed the Settlement Agreement on December 7, 2012.

The Settlement Class consists of all Michaels' customers in the United States who purchased items at a Michaels store location during the Class Period, and whose Payment Card was swiped through one or more of the Tampered PIN Pad Terminals. The specific Michaels stores locations that contained Tampered PIN Pad Terminals, and were involved in the Compromise, are listed in Exhibit E to the Settlement Agreement. Excluded from the Settlement Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff. Also excluded are any individuals or entities who "opt out" of the Settlement by complying with the Procedure for Opting Out of Class in Paragraph 13 of the Settlement Agreement. Pursuant to Paragraph 12 of the Settlement Agreement, Michaels will cause notice of the Settlement that meets the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, to be served on the appropriate federal and state officials within the time period required by CAFA and will file a certification stating the date(s) on which the CAFA notices were sent.

**B.    Reasons for Settlement**

Every settlement is necessarily the result of a risk-benefit analysis that requires the parties to balance the merits of the claims and defenses asserted, the likelihood of successfully

obtaining or defeating class certification, the chances of prevailing on the ultimate merits of the suit, and the considerable burdens and risks of litigation. Taking all factors into consideration, the parties have concluded that the benefits of settling this case outweigh the attendant risks of litigation, including the uncertainties and difficulties pertaining to class certification, the legal and factual defenses that have been asserted by Michaels, the expense and length of time necessary to see this matter through to trial, the uncertainties of the outcome of the litigation, and the fact that resolution of the class claims, whenever and however determined, will likely be submitted for appellate review. As described herein, there are substantial benefits afforded to the Settlement Class by the Settlement.

In light of the risks and costs of continued litigation, Plaintiffs and their counsel believe that the Settlement – which directly provides Settlement Class members with reimbursement for qualifying unreimbursed out-of pocket monetary losses sustained in connection with the Compromise and a period of credit monitoring paid for by Michaels – is not only reasonable, but is an exemplary recovery for the Settlement Class. Clearly, this represents an excellent result for Settlement Class members and merits preliminary approval, and, ultimately, final approval.

### C. Terms of the Proposed Settlement

The proposed Settlement is the result of substantial arm's-length negotiations between Plaintiffs and Michaels, by their respective counsel. The negotiations commenced only after the determination of a hard fought motion to dismiss. Neither party has conceded the merits of their respective positions; on the contrary, the parties continued to view their respective positions as both legitimate and credible.

The framework created by the Settlement will result in Settlement Class members recovering immediate, substantial, and certain relief. Despite Michaels' arguments against the viability and value of Plaintiffs' claims, as a result of the Settlement, the Settlement Class

6

members will now receive notice of the Compromise itself, monetary reimbursement for qualifying out-of-pocket expenses already caused by the Compromise, credit monitoring services to protect against continued harm arising from the Compromise, and confirmation that Michaels has taken steps to enhance PIN Pad security since the Compromise. In exchange, the Settlement Class members provide Michaels with a release of claims related to the Compromise.

The Settlement generally provides that Michaels will create a fund of up to $800,000 from which Settlement Class Members can obtain monetary recovery for qualifying unreimbursed out-of-pocket losses incurred in connection with the Compromise, as well as up to four years of credit monitoring. The settlement fund is non-reversionary up to $600,000 and any unclaimed or unused funds up to that amount will be distributed as a *cy pres* award, subject to Court approval, to Starlight Children's Foundation, a nationally recognized charity.

To make a claim for credit monitoring services, Settlement Class members need only to submit a Claim Form signed under penalty of perjury that includes personal contact information as well as basic facts about their payment card transaction(s) at one or more of Michaels' store locations affected by the Compromise. To make a claim for monetary reimbursement of qualified unreimbursed out-of-pocket losses, Settlement Class members must also include in their Claim Form basic information about those losses with supporting documentation. The Settlement Administrator, Epiq Systems, Inc., will administer verification and payment of all verified claims.

Each of the Settlement Class Representatives took the initiative to commence this litigation, assisted in the pre-suit investigations, stayed apprised of case developments, and accepted personal risks and responsibilities on behalf of others similarly situated. Therefore, subject to Court approval and in recognition of these efforts and risks, the Settlement also

provides for incentive awards for each Settlement Class Representative up to $2,500.00. The requested incentive awards will come out of any award of litigation costs to Class Counsel.

The Settlement also provides that Class Counsel may request for their services attorneys' fees up to $1.2 million and litigation costs up to $100,000.00. Class Counsel will file a detailed application for their attorneys' fees and costs prior to the fairness hearing.

     **D.**    **Class Notice**

The Settlement Agreement provides for a comprehensive plan by which notice of the Settlement will be disseminated to prospective Settlement Class members by traditional publication, Internet publication, and in those Michaels' retail stores affected by the Compromise. Specifically, the Settlement Agreement prescribes a campaign by which Michaels will disseminate the Notice to prospective Settlement Class members by publication of a summary notice in USA Today with circulation in areas where the affected stores are located. Settlement Agreement at ¶ 12(a). The Settlement Agreement further provides that the Settlement Administrator will establish and maintain a Settlement-related Internet website with comprehensive information concerning the settlement including a list of all stores affected by the Compromise. In addition, Michaels will provide a link to the Settlement-related website on its own consumer-facing website. *Id.* Moreover, for a period of ninety days, Michaels will provide summary notification of the Settlement on the cash register receipt tape in each of the stores affected by the Compromise. *Id.*

## III.   ARGUMENT

### THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, CONDITIONALLY CERTIFY THE SETTLEMENT CLASS, APPOINT PLAINTIFFS AS CLASS REPRESENTATIVES, APPROVE THE PROPOSED NOTICE TO CLASS MEMBERS, AND SCHEDULE A FAIRNESS HEARING

### A.   Legal Principles Governing Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  There are three steps to the Court's analysis:  (1) the Court must preliminarily approve the proposed Settlement; (2) members of the Settlement Class must be given notice of the proposed Settlement; and (3) a hearing must be held, after which the Court must decide whether the proposed Settlement is fair, reasonable, and adequate. *See Gautreaux*, 690 F.2d at 621 n.3; Manual § 21.632.  It is long settled that "compromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 585 (1910).

It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.  *See Seelsby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.").  In determining whether preliminary approval is warranted, the issue before the Court is whether the settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the settlement should be given to Class members, and a hearing scheduled to consider final settlement approval.  *See Armstrong,* 616 F.2d at 314, *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("The courts of appeals have required that district court approval of a settlement pursuant to Rule 23(e) be given

only where the district finds the settlement fair, reasonable and adequate."). The Court is not required at this point to make a final determination as to the fairness of the Settlement. *Isby*, 75 F.3d at 1198. That decision is made only at the final approval stage, after notice of the Settlement has been provided to the Class members and they have had an opportunity to voice their views of the settlement. *See* 3B J.W. Moore, Moore's Federal Practice (2d ed. 1996) ¶ 23.80[2.-1] at 23-479. Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re Bromine Antitrust Litig*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low").

Here, the Settlement consideration is fair, reasonable, and adequate, and well within the range of possible approval. In addition, Michaels' agreement to pay Class Counsel's attorneys' fees of $1,200,000, incentive awards and litigation expenses not to exceed $100,000, and all notice and administration costs, is fair and reasonable as well.

### B.    The Seventh Circuit's Standards Governing Class Action Settlements

As is the case with final approval, a court has wide discretion in making the first-stage determination of the appropriateness of a settlement. *See Armstrong*, 616 F.2d at 313. The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986); *Isby*, 75 F.3d at 1196-97. Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196.

The key question at this preliminary approval stage is whether the settlement is "within the range of possible approval." *Gautreaux*, 690 F.2d at 621 n.3 (internal quotation marks omitted). In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1198-99 (*citing E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985)), and has identified several factors for analyzing whether a class action settlement should be given final approval including:

1. the strength of the plaintiffs' case on the merits measured against the terms of the settlement;

2. the complexity, length, and expense of continued litigation;

3. the amount of opposition to the settlement;

4. the presence of collusion in gaining a settlement;

5. the stage of the proceedings; and

6. the amount of discovery completed.

*General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also, e.g., Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002). In weighing these factors, the district court should "recognize[] that the first factor, the relative strength of the plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199.

The Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," and so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889. Indeed, a district court should not reject

11

a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Consideration of these factors confirms that the settlement is well "within the range of possible approval." Analysis of all of these factors weighs in favor of the Court preliminarily – and ultimately finally – approving the Settlement.

### 1. The Strength Of Plaintiffs' Case Measured Against The Settlement

Class Counsel have made a strong case that Michaels' conduct constituted a breach of its implied contract to take reasonable measures to protect Class members' personal and financial information when Michaels processed payment card transactions using a PIN Pad. Moreover, Class Counsel have argued that Michaels' conduct, including its failure to provide comprehensive notice of the Compromise to its victims, constituted a violation of the Illinois' Personal Information Protection Act ("PIPA") and Consumer Fraud and Deceptive Business Practices Act. If Plaintiffs were to conduct formal discovery and further independent investigation, they believe they could establish Michaels' liability at trial.

While Plaintiffs believe in the strength of their case, they must, however, realistically acknowledge several factors which advise acceptance of this Settlement.[2] First, Michaels has

---

[2] Additionally, in considering a settlement, a court is required to take the parties' views into account. *DeBoer*, 64 F.3d at 1178 ("The views of the parties to the settlement must also be considered."); *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (citation and internal quotation marks omitted); *In re RJR Nabisco, Inc. Secs. Litig.*, No. MDL No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702 at *12 (S.D.N.Y. Aug. 24, 1992) (court "should give deference, when considering the fairness of the proposed settlement, to the judgment of experienced class counsel"). A corollary to this deferential level of scrutiny is the rule that "an individual who objects has a heavy burden of proving the settlement is unreasonable." *Brotherton*, 141 F. Supp. 2d at 904 (citing cases); *see also In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974); *Cotton*, 559 F.2d at 1330 (holding that in analyzing a class settlement, a trial court may rely on the judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"). Also significant is the fact that Michaels and its counsel support this Settlement. *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y. 1969) (the Court may consider the views of all involved counsel when deciding whether to approve a settlement).

made clear that it will mount a vigorous defense, asserting, among other things, that:

- it entered no implied contract with consumers concerning the use of their information;

- it complied with all data security standards, including PCI standards;

- the notice of the Compromise that it provided to Class members satisfied PIPA;

- it cannot be held liable to any Class members who have not suffered unreimbursed out-of-pocket expenses in connection with the Compromise;

- the number of putative Class members who suffered unreimbursed out-of-pocket expenses is very small; and

- damages, if any, cannot be calculated on a class-wide basis.

While Plaintiffs strongly believe that they could overcome these defenses, they cannot responsibly ignore the risk that this Court or a reviewing court might not accept all of their arguments.

There are also the risks inherent in the class certification motion practice that is scheduled to ensue in this litigation in due course. Additionally, there are other risks and uncertainties relating to liability and damages and potential relief present here. These litigation risks, coupled with the substantial material benefits the Settlement will garner for Settlement Class members, weigh in favor of preliminary, and ultimately final, approval of the Settlement.

Second, the sheer amount of time it will take to litigate the case to conclusion counsels in favor of accepting this settlement now. Under this Settlement, the Settlement Class will realize substantial and immediate benefits once the Settlement is approved. Indeed, the benefit of enhanced notice of the Compromise and credit monitoring services to Settlement Class members may diminish with the further passage of time. Without the Settlement and with continued and protracted litigation, each Class member who wanted credit monitoring services would be required to pay for those services on the open market at a cost of approximately $10 per month.

While continued litigation may allow Settlement Class members to receive reimbursement for this expense, the Settlement provides far more beneficial relief in the form of credit monitoring services paid for by Michaels without additional expense to Settlement Class members. Every Settlement Class Member who files a claim may receive up to four years of credit monitoring services, which at $10 per month could have cost them about $480.00 out-of-pocket. Moreover, Michaels' customers will receive notice of the Compromise that complies with Rule 23 and due process through the Class Notice process discussed herein.

Finally, Michaels has agreed to pay Plaintiffs' attorneys' fees up to a capped limit. Thus, this cost typically associated with class relief will be borne by Defendant and will not reduce the amount of recovery available to the Settlement Class.

It is highly unlikely that Plaintiffs would be able to obtain a better outcome in this case even after prevailing on a trial on the merits. Moreover, that recovery would be years in the future, at significantly greater expense to the Settlement Class. There is a significant risk that the Class would receive less or nothing at all if litigation proceeded to the bitter end.

Thus, the first factor – which the Seventh Circuit has reiterated is "the most important" one, *Isby*, 75 F.3d at 1199; *Hiram Walker*, 768 F.2d at 889 – weighs strongly in favor of approving the settlement because the putative class would receive substantial benefits despite Michaels' arguments in its motions to dismiss. As a factual matter, it is clear that the Compromise occurred in Michaels retail stores and that the Compromise affected thousands of its customers. Indeed, several of the skimmers have been convicted for their roles in connection with the Compromise. But the legal questions such as whether Michaels had a contractual obligation to Plaintiffs to protect their information remain. Similarly, it is beyond dispute that Michaels did provide some notice of the Compromise to some Class members, however, the

legal question as to whether the notice was sufficiently disseminated and comprehensive remains unresolved. Plaintiffs would need to prevail on these questions to succeed in continued litigation.

In sum, when the challenges to success on the merits were this class action to be litigated further are balanced against the substantial benefits provided by the Settlement, this Settlement rests easily within the range of possible approval.

### 2. The Complexity, Length, And Expense Of Continued Litigation If The Settlement Is Not Approved

The proposed Settlement makes final decision on several disputed factual and legal issues unnecessary. Moreover, if the case had not settled, the expenses of continued litigation would also have been significant. Costs of testifying experts on data security and notice dissemination, discovery, class certification, summary judgment motion practice, as well as other pre-trial, trial and likely appeal expenses, would have been substantial. Correspondingly, in the event that the Court concludes that it cannot certify a nationwide class in a contested case, the likely result would be independent proceedings in various states. Indeed, the individual actions comprising the Consolidated Action were initially filed in several different states. Further, appeals could take years to resolve. This Settlement provides a reasonably prompt resolution with meaningful relief to all Settlement Class members without these additional major expenditures of time and money. This factor weighs in favor of preliminary approval.

### 3. The Amount Of Opposition To The Settlement

At the current stage of the litigation, prior to the dissemination of the Class Notice, no members of the Settlement Class, including the named Plaintiffs, have indicated any objections to the proposed Settlement. Class Counsel will revisit this issue at the fairness hearing, to the extent necessary.

### 4. The Presence Of Collusion In Gaining A Settlement

Courts generally presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion in the absence of evidence to the contrary. *Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325. This presumption is applicable here. The Settlement was reached only after protracted and often spirited, arm's-length negotiation by experienced counsel. This Settlement is not the result of collusion between the parties to trade the rights of absent class members for a large fee award for class counsel. To the contrary, notwithstanding the many impediments to recovery by the class, the Plaintiffs and Michaels have reached a settlement that would result in all Settlement Class members receiving certain and immediate benefits.

Although this case had not progressed to the class certification stage before negotiations began, the Seventh Circuit has made clear that there is nothing untoward about "settlement discussions [that] beg[i]n at an early stage in the litigation" of a class action. *Isby*, 75 F.3d at 1200 (approving settlement). As noted above, the negotiations were difficult and protracted, extending over approximately nine (9) months, during which time Plaintiffs obtained informal discovery and utilized the assistance of an experienced and respected mediator, the late Hon. Nicholas H. Politan (Ret.). Plaintiffs were kept apprised of the negotiations and have consented to the Settlement. The Settlement is thus not the product of collusion in any way. This factor also weighs in favor of preliminary approval.

### 5. The Stage Of The Proceedings And The Amount Of Discovery And Investigation Completed When Settlement Was Achieved

Class Counsel conducted a detailed investigation into the facts and law relating to the matters alleged. Moreover, the Settlement comes after Plaintiffs consulted with an expert in data

security and filed the Complaint. In addition, several of their claims survived a hard-fought motion to dismiss. Actual pending litigation – rather than the mere threat of litigation – informed negotiations. For the past nine months, Plaintiffs and their counsel conducted intensive arm's-length negotiations with Michaels through mediation, numerous telephonic conferences, and the exchange of numerous written proposals. Plaintiffs through their counsel, conducted informal discovery concerning the size of the Class and the number of Class members whose bank accounts were subject to unauthorized withdrawals, which allowed them to reasonably estimate the size of the settlement fund that will be distributed to Settlement Class members through direct monetary payments of unreimbursed out-of-pocket expenses and provision of credit monitoring services. This factor weighs in favor of preliminary approval.

### C.  Conditional Certification of the Class Under Rule 23(b)(3) for Settlement Purposes is Appropriate.

While a class must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 619, 622 (1997). Indeed, the Supreme Court "has expressly approved the use of the settlement class device." *Id.* at 618 ("the 'settlement only' class has become a stock device"). Plaintiffs seek conditional certification of the Settlement Class under Rule 23(b)(3), their appointment as Class Representatives, solely for purposes of the Settlement, and appointment of their counsel as Class Counsel. [3] A class may be certified if it satisfies all of the requirements of Rule 23(a) and one of the three subparagraphs of Rule 23(b), *see McDaniel v. Univ. Fid. Corp.*, No. 04 C 2157, 2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 20, 2004) (applying Rule 23 at

---

[3] Certification for settlement purposes is common in connection with settlements reached before a class certification ruling for litigation purposes has been made. *See* Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, § 11.27. (3d ed. 1992).

preliminary approval stage), but without regard to whether the class would be manageable for trial. *See Amchem*, 521 U.S. at 620.

The proposed Settlement Class consists of:

all customers who purchased items at a Michaels store location from January 1, 2011 to May 12, 2011, whose payment card was swiped through one of the Tampered PIN Pad Terminals.

Excluded from the Settlement Class are: (i) Defendant Michaels and its parents, subsidiaries employees, officers, agents, and directors; (ii) any individuals or entities who make a timely election to be excluded from the Class; and (iii) any judicial officer presiding over this matter and members of their immediate families and judicial staff.

This case meets the four prerequisites of Rule 23(a) necessary to class certification: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In addition, the case satisfies the requirements of Rule 23(b)(3): predominance of common issues and superiority of a class action.

**1.      The Settlement Class Satisfies Rule 23(a)**

Rule 23(a) establishes four prerequisites to certification of any class: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) the claims raise common questions of law or fact ("commonality"); (3) the claims or defenses of the proposed representatives are typical of those of the class ("typicality"); and (4) the representative parties can fairly and adequately protect the interests of the class ("adequacy").    The proposed Settlement Class here satisfies these prerequisites. Michaels has agreed to certification of the Settlement Class solely for purposes of the Settlement.  If the Court does not finally approve the Settlement, Michaels has reserved its right to oppose class certification.

### a)      Numerosity

Rule 23(a)(1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable."  "When class size reaches substantial proportions . . . , the impracticability requirement is usually satisfied by the numbers alone."  *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996) (*citing* 1 H. Newberg & A. Conte, Newberg on Class Actions, § 3.01, at 3-4 (3d ed. 1992)).   The members of the proposed Settlement Class are sufficiently numerous under Rule 23(a)(1) because joinder of thousands of Settlement Class members, who are geographically dispersed, would be impracticable.  *See In re Bank One Sec. Litig./Chicago S'holder Claims*, 00 CV 0767, 2002 U.S. Dist. LEXIS 8709, at *9 (N.D. Ill. May 9, 2002); *see also, Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed when there are more than forty (40) class members).

Here, thousands of Settlement Class members have already been the victims of unauthorized withdrawals resulting from the Compromise or had their information acquired by the skimmers.  Thus, the numerosity requirement is easily satisfied.

### b)      Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality focuses on the relationship of common facts and legal issues among class members.  1 H. Newberg & A. Conte, Newberg on Class Actions, § 3:10 at 271 (4th ed. 2002). The commonality requirement is easily met.  "Courts have consistently found a 'common nucleus of operative fact[s]' when the defendants are alleged to have directed 'standardized conduct toward [the putative class] members.'"  *Chandler v. Sw. Jeep-Eagle, Inc.,* 162 F.R.D. 302, 308 (N.D. Ill. 1995) (*quoting Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)). Here, Michaels had consistent, nationwide (and as alleged in the complaint, flawed and inadequate) PIN Pad data security practices and policies.  The Compromise subjected customers

in eighty-six (86) stores to the threat of unauthorized withdrawals from their bank accounts and unauthorized charges on their credit cards; the facts are thus common.  The issue of whether Michaels had an implied contractual obligation to protect Class members' information and whether Michaels breached that obligation is common to all Settlement Class members. Moreover, the alleged insufficiency of Michaels' notice of the Compromise to Illinois customers affected each of the Illinois Subclass members in the same way.

### c) Typicality

Rule 23(a)(3) requires that the representative plaintiffs' claims be typical of those of the claims of the other settlement class members.  A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory." *Rosario*, 963 F.2d at 1018 (*quoting De La Fuente v. Stokely-VanCamp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)).  Here, the claims of the Plaintiffs arise from the same alleged practices and conduct by Michaels as do the claims of the other Settlement Class members and Michaels' alleged conduct pertaining to proof of liability would not differ among Settlement Class Members.  Accordingly, the claims of Plaintiffs and all Settlement Class members are typical. Moreover, though a small percentage of the Settlement Class received notice of the Compromise in the form of an "email alert," the Complaint alleges that such notice was insufficient to satisfy PIPA.

### d) Adequacy

Finally, Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class."  The adequacy standard involves two elements: one relates to the adequacy of the named plaintiffs' representation of the class and requires that there be no conflict between the interests of the representative and those of the class in general; the other relates to the adequacy of class counsel's representation.  *See Sec'y of Labor v. Fitzsimmons,* 805

F.2d 682, 697 (7th Cir. 1986) (*en banc*). As to the first element, "it is clear that adequacy of representation is established when no collusion is shown between the representative and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in the fulfillment of his duty." *Ebersohl v. Bechtel Corp.*, 2010 WL 2266736, at *2 (S.D. Ill. June 7, 2010) (*quoting Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982)).

None of these disqualifying factors is present here. Plaintiffs' interests are aligned with all Settlement Class members as they were allegedly injured by Michaels' failure to provide reasonable and adequate PIN Pad data security. Plaintiffs have no interests antagonistic to the other Settlement Class members' interests and each has fulfilled his/her duty to the Settlement Class by remaining informed of the negotiations with Michaels and approving the Settlement prior to any discussion with Michaels regarding any compensation that they may receive. The Settlement provides that each of the Plaintiffs in the Actions may apply for an incentive award of up to $2,500 in recognition of the efforts they made and risks they undertook in connection with the litigation. These awards are reasonable in light of the overall benefit conferred on the Settlement Class. *See, e.g., In re Northfield Labs., Inc. Secs. Litig.*, Case No. 06-1493, 2012 U.S. Dist. LEXIS 88667 (N.D. Ill. June 26, 2012) (approving class action settlement and incentive award of $10,000 to each named plaintiff).

Second, Plaintiffs have retained counsel who are qualified and experienced to litigate this action. Class Counsel have represented plaintiffs in numerous consumer class action cases over the past decades, and are respected firms involved in complex litigation. Moreover, Class Counsel exhibited the desire and expertise to vigorously prosecute this class action and to successfully negotiate a compromise of such litigation. *See Culver v. City of Milwaukee*, 277

F.3d 908, 913 (7th Cir. 2002) (discussing, in the context of the Rule 23(a)(4) "adequacy" analysis, the importance of Class Counsel's advocacy of the proposed settlement).

### 2. The Settlement Class Meets The Requirements Of Rule 23(b)(3).

In addition to satisfying Rule 23(a), the Settlement Class satisfies the certification requirements of, and therefore should be certified under, Rule 23(b)(3).

### a) Predominance

Rule 23(b)(3) requires that a plaintiff show that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." The predominance requirement may be satisfied when "the central questions in the litigation are the same for all class members." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010). Class action status is appropriate where common questions represent a significant aspect of a case and they can be resolved in a single action. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 528 (2d ed. 1986).

Common questions, however, need not be dispositive of the entire action, because "predominate" under the rule does not mean "determinative." *Id.* at 528-29. Courts generally focus on the liability issue, and if the liability issue is common to the class, common questions are held to predominate over individual questions. *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

As previously noted, the central issues in this litigation are the extent and nature of Michaels' PIN Pad security practices; whether Michaels had an implied contractual obligation to protect Class members' information; whether Michaels breached that obligation; and whether Michaels' notice of the Compromise to Illinois customers was sufficient to satisfy PIPA. These common issues predominate. Because these core issues are common to all members of the Settlement Class, the Rule 23(b)(3) predominance requirement is satisfied.

b) **Superiority**

Rule 23(b)(3) also requires that the Court find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority requirement is necessarily comparative; by its own terms, Rule 23(b)(3) requires the Court to consider other possible means of resolving the claims of the class.

Possible alternatives to the class action device include: joinder, intervention, consolidation, a test case, and an administrative proceeding. 2 Newberg (4th ed. Supp. 2010), *supra*, § 4.27. None of those alternatives is superior to class action treatment of this Settlement precisely because the class consists of tens of thousands of customers and the monetary value of each claim is relatively small given the costs of litigation. "Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

In sum, the Settlement Class's claims meet the requirements of Rule 23(b)(3), and should be certified.

D. **The Proposed Class Notice Is Adequate**

Notice requirements are governed by both Rule 23(c)(2)(A), which states that ". . . the Court may direct appropriate notice to the Class", and Rule 23(c)(2)(B) which states that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e)(B) similarly directs that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Here, the method of notice is outlined in paragraph 12 of the Settlement Agreement. In addition, the form of the Class Notice is attached

to the Settlement Agreement as Exhibit C. The method and form of notice meets all of the requirements of Rule 23.

The Class Notice satisfies Rule 23's directives and the due process clause requirements because the Settlement Class will be alerted to and informed about the Settlement, their rights, and their opportunity to appear and be heard at the Fairness Hearing. *See Mashburn v. Nat'l Healthcare Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988). Here, the parties propose an extensive notice campaign, designed to reach as many Settlement Class members as possible. Individual members of the Settlement Class cannot be identified through reasonable effort, because while Michaels does have some information regarding Settlement Class members (specifically, partial "Track II" data from payment cards swiped through tampered PIN Pad terminals and retrieved from the skimmers' memory chips placed inside of those PIN Pads during the tampering) it does not have Settlement Class members' names or other contact information. To inform Class Members of their rights under the Settlement Agreement, Michaels will publish Summary Notice in two editions of *USA Today* targeted to where the affected stores are located. Settlement Agreement ¶ 12. Moreover, Michaels will also provide notice to Michaels' customers on the register receipt tape in the retail stores affected by the Compromise for a period of ninety days. This is a highly effective means of targeting the notice to the individuals most likely to have been affected by the Compromise. In addition, Michaels has also agreed to establish an Internet website dedicated to the Settlement as an information resource for Settlement Class members, upon which the Settlement Administrator will publish the Settlement Notice as well as other significant case-related documents. *Id*. Finally, Michaels will provide a link to the Settlement website on its consumer-facing webpage. *Id.*

As to the content and form of the Settlement notice, Rule 23(c)(2)(B) provides that the notice to a Rule 23(b)(3) class must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and, the binding effect of a class judgment on class members under Rule 23(c)(3). Where notice is being sent in connection with a proposed settlement, it must also inform class members of the terms of the settlement and their options with respect thereto. *See Domestic Air Trans.,* 141 F.R.D. at 553-555. The proposed Class Notice: describes the nature, history, and status of the Action; sets forth the definition of the Settlement Class; states the Class' claims and issues; informs members of the Settlement Class of the right to exclude themselves from the settlement of the Rule 23(b)(3) settled claims, as well as the deadline and procedure for doing so; and, warns of the binding effect of the settlement approval proceedings. The Notice also describes the Settlement, states the parties' disagreement over liability and damages, sets out the attorneys' fees and expenses that Class Counsel intend to seek in connection with final settlement approval provides contact information for Class Counsel, and summarizes the reasons the parties are proposing the Settlement. Finally, the Notice outlines the date, time, and place of the Fairness Hearing, and the procedures for commenting on the Settlement and appearing at the Hearing. The Notice, therefore, is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The Notice set forth in the Settlement Agreement fulfills all requirements of adequate notice and should be duly approved.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs, by Interim Class Counsel, respectfully submit that the Court should preliminarily approve the Class Action Settlement Agreement; enter the [Proposed] Order Granting Preliminary Approval to Proposed Class Settlement; preliminarily certify the Settlement Class; conditionally certify Plaintiffs as representatives thereof; appoint Plaintiffs' Interim Class Counsel as Class Counsel; approve the manner and form of notice to be furnished to Settlement Class members; approve the form of the claim form; and schedule a Fairness Hearing under Fed. R. Civ. P. 23(e)(1)(C) for the purpose of determining whether the Settlement is fair, reasonable, and adequate and, therefore, deserving of final approval.

**Dated:**  December 13, 2012                                  Respectfully submitted,

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**


By: /s/  Adam J. Levitt
    Adam J. Levitt
    Edmund S. Aronowitz
    55 West Monroe Street, Suite 1111
    Chicago, Illinois  60603
    Tel:  (312) 984-0000
    Fax:  (312) 984-0001
    levitt@whafh.com
    aronowitz@whafh.com

    Scott A. Bursor (*pro hac vice*)
    Joseph I. Marchese (*pro hac vice*)
    **BURSOR & FISHER, P.A.**
    888 Seventh Avenue
    New York, New York 10019
    Tel: 212-983-9113
    Fax: 212-983-9163
    scott@bursor.com
    jmarchese@bursor.com

    Anthony Vozzolo (*pro hac vice*)
    Christopher Marlborough
    **FARUQI & FARUQI, LLP**

369 Lexington Ave., 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
avozzolo@faruqilaw.com
cmarlborough@faruqilaw.com

***Plaintiffs' Interim Class Counsel and***
***Proposed Class Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2012, a copy of the foregoing document was filed electronically using the CM/ECF System.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. In addition, a copy of the foregoing was served on the following via electronic mail:

David J. Disabato (ddisabato@disabatolaw.com)
Disabato & Bouckenooghe LLC
8 Mansfield Court
Mendham, New Jersey 07945
(973) 813-2525

***Counsel for Plaintiff Lori Wilson***

By: /s/ Edmund S. Aronowitz____
Edmund S. Aronowitz

28