**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE MICHAELS STORES PIN PAD LITIGATION<br><br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br><br>This Documents Relates to All Actions | Case No. 1:11-cv-03350<br><br><u>CLASS ACTION</u><br><br>Honorable Thomas M. Durkin |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS**
<u>**AND FINAL APPROVAL OF SETTLEMENT**</u>

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   STATEMENT OF FACTS ................................................................................ 1

    A.    Factual Background And Procedural History ........................................... 1

    B.    Terms Of The Settlement ........................................................................ 3

III.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23 ........................................ 5

    A.    The Settlement Class Satisfies Rule 23(a)'s Requirements ...................... 5

        1.    Numerosity ................................................................................... 5

        2.    Commonality ............................................................................... 6

        3.    Typicality .................................................................................... 7

        4.    Adequacy .................................................................................... 7

    B.    The Settlement Class Satisfies Rule 23(b)(3)'s Requirements ................. 8

        1.    Predominance ............................................................................... 8

        2.    Superiority ................................................................................... 9

IV.  FINAL APPROVAL SHOULD BE GRANTED BECAUSE THE SETTLEMENT SATISFIES ALL OF THE SEVENTH CIRCUIT'S *ISBY* STANDARDS ................................................................................................ 10

    A.    The Strength Of Plaintiffs' Case Measured Against The Settlement ...................... 11

    B.    The Complexity, Length, And Expense Of Continued Litigation If The Settlement Is Not Approved ........................................................... 15

    C.    There Were Zero Objections And Only Two Opt-Outs To The Settlement ................................................................................................ 16

    D.    There Was No Collusion In Obtaining The Settlement ........................... 16

    E.    The Stage Of The Proceedings And The Amount Of Investigation And Discovery Completed When Settlement Was Achieved ................... 17

V.   THE COURT APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS ....................................................................................................... 18

VI.  CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*,
235 F. Supp. 2d 816 (N.D. Ill. 2002) ................................................................ 10

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................... 4, 9

*Armstrong v. Bd. of Sch. Dirs. Of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ................................................................ 10, 16

*Cannon v. Texas Gulf Sulphur Co.*,
55 F.R.D. 308 (S.D.N.Y. 1969) ................................................................ 12

*Carson v. American Brands, Inc.*,
450 U.S. 79, 88 n.14 (1981) ................................................................... 11

*Chandler v. Sw. Jeep-Eagle, Inc.*,
162 F.R.D. 302 (N.D. Ill. 1995) ................................................................. 6

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ................................................................ 12

*De La Fuente v. Stokely-VanCamp, Inc.*,
713 F.2d 225 (7th Cir. 1983) ..................................................................... 7

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
89 F.R.D. 87 (S.D.N.Y. 1981) ..................................................................... 8

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ................................................... 10, 11, 14

*Ebersohl v. Bechtel Corp.*,
2010 WL 2266736 (S.D. Ill. June 7, 2010) .............................................. 7

*General Elec. Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) ................................................................ 10

*Hispanics United of DuPage Cty. V. Vill. Of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997) ......................................................... 10

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ..................................................................... 5

*In re Bank One Sec. Litig./Chicago S'holder Claims*,
00 CV 0767, 2002 U.S. Dist. LEXIS 8709 (N.D. Ill. May 9, 2002) ........... 6

*In re Cendant Corp. Secs. Litig.*,
109 F. Supp. 2d 235 (D.N.J. 2000) ........................................................ 12

*In re RJR Nabisco, Inc. Secs. Litig.*, Nos. MDL No. 818 (MBM), 88 Civ. 7905 (MBM),
1992 WL 210138, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) .......... 12

ii

*Isby V. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ............................................................ 10, 11, 14, 16

*LiPuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ............................................................ 13

*Mars Steel v. Continental Ill. Nat'l Bank & Trust*,
    834 F.2d 677 (7th Cir. 1987) ............................................................ 16

*McDeaniel v. Univ. Fid. Corp.*, No. 04 C. 2157,
    2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 20, 2004) ............................................................ 5

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004) ............................................................ 19

*Pella Corp. v. Saltzman*,
    606 F.3d 391 (7th Cir. 2010) ............................................................ 8

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................ 9

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986) ............................................................ 6

*Rogers v. Khatra Petro, Inc.*,
    No. 2:08 cv 294, 2011 WL 611873 (N.D. Ind. Feb. 14, 2011) ............................................................ 19

*Rosario v. Livaditis*,
    963 F.3d 1013 (7th Cir. 1992) ............................................................ 5, 6, 7

*Sec'y of Labor v. Fitzsimmons*,
    805 F.2d 682 (7th Cir. 1986) ............................................................ 7

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ............................................................ 11

*Wade v. Goldschmidt*,
    673 F.2d 182 (7th Cir. 1982) ............................................................ 7

*Williams v. Rohm and Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ............................................................ 1, 13

**RULES**

Fed. R. Civ. P. 23(a)(1) ............................................................ 5

Fed. R. Civ. P. 23(a)(2) ............................................................ 6

Fed. R. Civ. P. 23(a)(3) ............................................................ 6

Fed. R. Civ. P. 23(a)(4) ............................................................ 7

Fed. R. Civ. P. 23(b)(3) ............................................................ 8, 9

**TREATISES**

1 H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.01 (3d ed. 1992)................................ 5

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
　Federal Practice and Procedure § 1778 (2d ed. 1986) ................................................................ 8

Manual for Complex Litigation (Fourth) at § 11.423 (2004) ....................................................... 17

## I. PRELIMINARY STATEMENT

Plaintiffs Mary Allen, Kelly M. Maucieri, Brandi Ramundo, Adrianna Sierra, Fred Sherry, Sara Rosenfeld, Ilana Sofer, Lori Wilson, Jeremy Williams and Kimberly M. Siprut (collectively, "Plaintiffs" or "Class Representatives") and Class Counsel Adam J. Levitt, Scott A. Bursor and Anthony Vozzolo (collectively, "Class Counsel") respectfully submit this memorandum of law in support of their motion for and order certifying the settlement class and granting final approval to this class action settlement. The Settlement[1] is fair, reasonable, and adequate – indeed, it offers Settlement Class Members the opportunity to be fully reimbursed for their out-of-pocket monetary losses related to Michaels' security compromise, and it also offers three-bureau credit monitoring services to mitigate potential future harm of identity theft and credit fraud. Furthermore, notice of the Settlement was widely disseminated through the Court-approved notice plan, and the Settlement has garnered no opposition from Settlement Class Members. Accordingly, this Court should certify the Settlement Class and grant Final Approval to this Settlement.

## II. STATEMENT OF FACTS

### A. Factual Background And Procedural History

Plaintiffs filed their consolidated class action cases against Michaels alleging that it failed to secure customer personal financial data – including credit and debit card information and personal identification numbers ("PINs") – and that it failed to provide adequate notice to its customers that their information had been stolen as a result of unauthorized PIN Pad tampering at 86 Michaels stores across the country between January 1, 2011 and May 12, 2011.[2]

---

[1] Capitalized terms that are not defined herein shall have the meaning assigned in the Settlement Agreement.

[2] The seven consolidated cases are: (i) *Brandi F. Ramundo v. Michaels Stores, Inc.,* United States District Court for the Northern District of Illinois, Eastern Division, Case No. 1:11-cv-3350, filed May 18, 2011; (ii) *Mary Allen v. Michael Stores, Inc.,* United States District Court for the Northern District of Illinois, Eastern Division, Case No. 1:11-cv-3579, filed May 27, 2011; (iii) *Kimberly M. Siprut v. Michael Stores, Inc.,* United States District Court for the Northern District of Illinois, Eastern Division, Case No. 1:11-cv-3725, filed June 1, 2011; (iv) *Jeremy Williams v. Michaels Stores, Inc.,* United States District Court for the Northern District of Illinois, Eastern

On July 8, 2011 Class Counsel filed the Consolidated Amended Class Action Complaint ("CACAC") on behalf of the Plaintiffs. Dkt. 25. The CACAC alleges that the security breach occurred when so-called "skimmers" tampered with electronic payment PIN Pad machines in Michaels' retail stores to transmit customer personally identifying information ("PII"), including credit card, debit card and password information, to the skimmers.[3] CACAC ¶ 2. The skimmers later used that information to make unauthorized withdrawals from the bank accounts of victimized Michaels customers. *Id.* ¶ 3. The CACAC further alleges that Michaels failed to adequately secure its customers' PII in violation of its contractual obligations to comply with the security requirements of Visa and other payment card companies, including the use of tamper-resistant PIN Pads in all Michaels stores. *Id.* ¶¶ 4, 51. Moreover, Plaintiffs allege that Michaels failed to adequately disclose the extent of the security breach or take reasonable steps to clearly and conspicuously inform its customers about their exposure. *Id.* ¶ 9. Among other things, Plaintiffs allege unreimbursed monetary losses as a result of the security breach. *Id.* ¶¶ 101, 125.

The CACAC asserts claims for breach of contract, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, the Federal Stored Communications Act, negligence, negligence per se, and breach of implied contract. *Id.* ¶¶ 73-125. The CACAC seeks an injunction against Michaels requiring it to disseminate notice of the Compromise to all Class members, and to pay to Class members' the cost of credit monitoring services, restitution, damages, interest, and attorneys' fees and costs. *Id.* at 29-30. The CACAC also seeks

Division, Case No. 1:11-cv-3883, filed June 7, 2011; (v) *Sara Rosenfeld, et al. v. Michaels Stores, Inc.,* United States District Court for the District of New Jersey , Case No. 1-3086-11 filed June 30, 2011; (vi) *Lori Wilson v. Michaels Stores, Inc*., 11-cv-05210, United States District Court for the District of New Jersey; and (vii) *Fred Sherry v. Michaels Stores, Inc.*, United States District Court for the Northern District of Illinois, Eastern Division, Case No. 1:11-cv-05900, filed August 25, 2011.

[3] "Skimming" is the unauthorized capture of debit and/or credit card magnetic strip data by unauthorized persons, often referred to as "skimmers."

certification of a nationwide class of all similarly situated Michaels customers and a subclass of Class members who are Illinois residents (the "Illinois Subclass"). *Id.* ¶¶ 62-72.

Michaels filed a motion to dismiss the CACAC. Dkt. 34-36. In November 2011, Judge Kocoras granted in part and denied in part Michaels' Rule 12(b)(6) motion. Dkt. 56. By order dated November 23, 2011, the Court denied Michaels' motion with respect to the Illinois Consumer Fraud Act and implied breach of contract claims and granted the motion with respect to Plaintiffs' claims under the Stored Communications Act and for negligence and negligence per se. *Id.*

After recognizing that the remaining litigation would be time consuming, costly and drawn out, the parties agreed to private mediation in the hope of reaching a reasonable settlement. On February 8, 2012, the parties participated in a full day mediation session with the late Hon. Nicholas H. Politan (Ret.). The parties agreed upon most of the essential terms of the Settlement with the assistance of Judge Politan. However, the parties failed to reach immediate agreement on several remaining deal points, so litigation resumed. Ultimately, the parties reached the proposed Settlement only after Rule 26 disclosures were exchanged, a case schedule was ordered, and discovery requests were served. The parties executed the Class Action Settlement Agreement on December 7, 2012.

### B.    Terms Of The Settlement

The proposed Settlement is the result of substantial arm's-length negotiations between Plaintiffs and Michaels through their respective counsel. Neither party has conceded the merits of their respective positions. On the contrary, the parties continue to view their respective positions as both legitimate and credible. The framework created by the Settlement will result in Settlement Class Members recovering immediate, substantial and certain relief.

The Settlement Class consists of all Michaels' customers in the United States who purchased items at an affected Michaels retail store during the Class Period, whose payment Card was swiped through one of the Tampered PIN Pad Terminals. The eighty-six Michaels stores locations that contained Tampered PIN Pad Terminals, and were involved in the Compromise, are listed in Exhibit E to the Settlement Agreement.

The Settlement generally provides that Michaels will create a fund of up to $800,000 from which Settlement Class Members can recover monies for Unreimbursed Claims arising from the Compromise, as well as up to four years of credit monitoring services.[4] Certain expenses will also be paid from the fund, including administration costs, incentive awards in the amount of $2,500 for each Class Representative (if awarded by the Court), and Plaintiffs' litigation expenses. Settlement Class Members who claim Unreimbursed Claims may fully recover their losses by submitting the Court-approved claim form and attaching supporting documentation of the Unreimbursed Claims (e.g., bank statements and/or invoices that show fees and charges constituting Unreimbursed Claims). All Settlement Class members are entitled to credit monitoring services by submitting a completed claim form that does not require separate proof. The settlement fund is non-reversionary up to $600,000, and any unclaimed or unused funds up to that amount will be distributed as a *cy pres* award to the Starlight Children's Foundation, a global children's charity that offers services to improve the life and health of kids and families who are battling serious childhood illness.

In consideration for this relief, the Settlement Class Members provide a release of their claims pursuant to paragraph 18 of the Settlement Agreement. The existence and terms of the Settlement have been communicated through an extensive notice plan (discussed below).

---

[4] The credit monitoring being offered to Settlement Class members is a three-bureau reporting service aimed at identity theft prevention and early detection of credit fraud.

**III.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23**

To certify a class under Rule 23, the Court must find that the proposed class meets the elements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2) or (3).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *McDeaniel v. Univ. Fid. Corp.*, No. 04 C. 2157, 2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 20, 2004).  "Settlement is relevant to class certification" and is "a factor in the calculus."  *Id.* at 619, 622.  Indeed, the Supreme Court "has expressly approved the use of the class settlement device."  *Id.* at 618.   Plaintiffs seek conditional certification of the Settlement Class under Rule 23(b)(3), their appointment as Class Representatives solely for the purposes of the Settlement, and appointment of their counsel as Class Counsel solely for the purposes of the Settlement.

The proposed Settlement Class consists of:

> All customers who purchased items at a Michaels store location from January 1, 2011 to May 12, 2011, whose Payment Card was swiped on one of the Tampered PIN Pad Terminals.
>
> Excluded from the "Settlement Class," "Settlement Class Members," or "Class Members" are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.  Also excluded are any individuals who "opt out" of the Settlement.

**A.     The Settlement Class Satisfies Rule 23(a)'s Requirements**

Rule 23(a) includes four prerequisites to class certification:  (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) the claims raise common questions of law or fact ("commonality"); (3) the claims or defenses of the proposed representatives are typical of those of the class ("typicality"); and (4) the representative parties can fairly and adequately protect the interests of the class ("adequacy").  *See Rosario v. Livaditis,* 963 F.3d 1013, 1017 (7th Cir. 1992).  The proposed class meets all four prerequisites.

**1.     <u>Numerosity</u>**

Rule 23(a)(1) provides that a class action is maintainable only if "the class is so

numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "When class size reaches substantial proportions . . . , the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996) (*citing* 1 H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.01, at 3-4 (3d ed. 1992)). Members of the proposed Settlement Class are sufficiently numerous under Rule 23(a)(1) because joinder of tens of thousands of Settlement Class members who are geographically dispersed would be impracticable. *See In re Bank One Sec. Litig./Chicago S'holder Claims*, 00 CV 0767, 2002 U.S. Dist. LEXIS 8709, at *9 (N.D. Ill. May 9, 2002); *see also Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (certifying class of 29 class members).[5] The numerosity requirement is clearly satisfied under the circumstances here.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is achieved with the existence of a common question of either fact or law," being mindful that "[n]ot all factual or legal questions raised in the lawsuit need be common so long as a single issue is common to all class members." *Riordan*, 113 F.R.D. at 63. "Courts have consistently found a 'common nucleus of operative fact[s]' when the defendants are alleged to have directed 'standardized conduct toward [the putative class] members.'" *Chandler v. Sw. Jeep-Eagle, Inc.*, 162 F.R.D. 302, 308 (N.D. Ill. 1995) (*quoting Rosario*, 963 F.2d at 1018). In this case, Michaels' had standardized, nationwide PIN Pad data security practices and policies that affected the integrity and privacy of the PII of all Settlement Class Members. Questions involving the adequacy, implementation and execution of Michaels' PIN Pad data security practices and policies, and the sufficiency of Michaels' efforts to notify Settlement Class Members of the security breach are issues common to all Settlement Class Members. Therefore, common questions of law or fact exist here.

---

[5] Confirmatory discovery conducted by Class Counsel showed that approximately 95,000 unique Payment Card numbers were captured and put at risk as a result of the Compromise. Therefore, it was determined that the size of the Settlement Class numbers in the tens of thousands.

### 3. **Typicality**

Rule 23(a)(3) requires that the representative plaintiffs' claims be typical of those of the claims of the other Settlement Class members. *See* Fed. R. Civ. P. 23(a)(3). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory." *Rosario*, 963 F.2d at 1018 (*quoting De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). In this case, the claims of Plaintiffs and the Settlement Class Members arise from the same security breach and conduct by Michaels. Likewise, Plaintiffs suffered the same alleged harm – unauthorized dissemination and misuse of their PII – and would receive the same relief as the other Settlement Class Members. Accordingly, the typicality requirement is met.

### 4. **Adequacy**

Finally, Rule 23(a)(4) requires that the named plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy standard involves two elements: the first relates to the adequacy of the named plaintiffs' representation of the class and requires that there be no conflict between the interests of the representative and those of the class in general; the second relates to the adequacy of class counsel's representation. *See Sec'y of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986) (en banc). As to the first element, "it is clear that adequacy of representation is established when no collusion is shown between the representative and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in the fulfillment of his duty." *Ebersohl v. Bechtel Corp.*, 2010 WL 2266736, at *2 (S.D. Ill. June 7, 2010) (*quoting Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982)).

None of these disqualifying factors is present here. Plaintiffs' interests are aligned with the interests of the other Settlement Class Members, as they were all allegedly injured by the same security breach in the same manner. Plaintiffs have no interests antagonistic to the other

Settlement Class Members' interests, and each Plaintiff has met their duty to the Class by remaining informed of case developments, participating actively in advancing the case, and approving the Settlement after arm's-length negotiations with Michaels through counsel. Moreover, Class Counsel are highly experienced consumer class-action attorneys who vigorously litigated this case and successfully negotiated a fair compromise of the dispute. *See* Declaration of Joseph I. Marchese In Support Of Class Counsel's Motion for Final Approval of Settlement and for an Award of Attorneys' Fees, Costs and Expenses, and Class Representative Incentive Awards ("Marchese Decl.") (filed simultaneously herewith).

### B. The Settlement Class Satisfies Rule 23(b)(3)'s Requirements

In addition to satisfying Rule 23(a), the Settlement Class satisfies the certification requirements of, and therefore should be certified under, Rule 23(b)(3).

#### 1. Predominance

Rule 23(b)(3) requires that a plaintiff show that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3). The predominance requirement may be satisfied when "the central questions in the litigation are the same for all class members." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010). Class action status is appropriate where common questions represent a significant aspect of a case and they can be resolved in a single action. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 528 (2d ed. 1986).

Common questions, however, need not be dispositive of the entire action, because under the rule, "predominate" does not mean "determinative." *Id.* at 528-29. Courts generally focus on the liability issue, and if the liability issue is common to the class, common questions are held to predominate over individual questions. *See Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

As previously noted, the central issues in this litigation are whether Michaels had an implied contractual obligation to protect Class Members' PII; whether Michaels breached that obligation; and whether Michaels' notice of the Compromise to Illinois customers was sufficient to satisfy the Illinois Personal Information Protection Act ("PIPA") and Consumer Fraud and Deceptive Business Practices Act. These common issues predominate. Because these core issues are common to all members of the Settlement Class, the Rule 23(b)(3) predominance requirement is satisfied.

## 2. Superiority

Rule 23(b)(3) also requires that the Court find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement is necessarily comparative; by its own terms, Rule 23(b)(3) requires the Court to consider other possible means of resolving the claims of the class.

The Supreme Court noted in *Amchem* that class action settlement classes obviate the need to determine pursuant to Rule 23(b)(3) whether "a class is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amchem*, 521 U.S. at 620. That said, a brief consideration of the possible alternatives to a class action shows that this case meets the superiority requirement.

Possible alternatives to the class action device include joinder, intervention, consolidation, a test case, and an administrative proceeding. 2 Newberg (4th ed. Supp. 2010), *supra*, § 4.27. None of those alternatives is superior to class action treatment of this settlement precisely because the class consists of tens of thousands of customers, and the monetary value of each claim is relatively small compared to the costs of litigation. "Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . most of the

plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

In sum, the Settlement Class's claims meet the requirements of Rule 23(b)(3) and should be certified.

## IV. FINAL APPROVAL SHOULD BE GRANTED BECAUSE THE SETTLEMENT SATISFIES ALL OF THE SEVENTH CIRCUIT'S *ISBY* STANDARDS

"Federal courts naturally favor the settlement of class action litigation." *Isby V. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Armstrong v. Bd. of Sch. Dirs. Of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.").  Courts look upon the settlement of lawsuits with favor because such settlements promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage Cty. V. Vill. Of Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997).  Indeed, compromise is particularly appropriate in complex class action cases.  *See id.*

In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1198-99 (*citing E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985)), and has identified several factors for analyzing whether a class action settlement should be given final approval including:

1. the strength of the plaintiffs' case on the merits measured against the terms of the settlement;
2. the complexity, length, and expense of continued litigation;
3. the amount of opposition to the settlement;
4. the presence of collusion in gaining a settlement; and
5. the stage of the proceedings and the amount of discovery completed.

*General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also, e.g., Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002). In weighing these factors, the district court should "recognize[] that the first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby,* 75 F.3d at 1199.

The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986); *Isby*, 75 F.3d at 1196-97. Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196.

Likewise, the Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889. Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Analysis of all these factors weighs in favor of finally approving the Settlement.

## A. The Strength Of Plaintiffs' Case Measured Against The Settlement

The "most important factor relevant to the fairness of a class action settlement" is the "strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Class Counsel believe they have a strong case that Michaels' conduct constituted a

breach of its implied contract to take reasonable measures to protect Class Members' PII when processing payment card transactions. Moreover, Class Counsel believes Michaels' conduct, including its failure to provide adequate notice of the Compromise to its victims, constituted a violation of PIPA and the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiffs believe that through discovery and their independent investigation, they would be able to establish at trial that Michaels' actions violated these laws.

While Plaintiffs believe in the strength of their case, they must, however, realistically acknowledge several factors which counsel acceptance of this early Settlement.[6] First, Michaels has made clear that it will mount a vigorous defense in a litigation context, asserting, among other things, that:

- it did not enter into an implied contract with consumers concerning the use of their PII;
- it complied with all data security standards required of it;
- the notice of the Compromise that it provided to Class members satisfies PIPA;
- class certification would be unmanageable;
- it cannot be held liable to any Class members who have not suffered unreimbursed out-of-pocket expenses in connection with the Compromise;
- the number of putative Class members who suffered unreimbursed out-of-pocket expenses is small; and
- damages, if any, cannot be calculated on a class-wide basis.

While Plaintiffs strongly believe that they could overcome these defenses, they cannot

---

[6] When analyzing a settlement, a court should take counsels' and the parties' views into account. *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (citation and internal quotation marks omitted); *In re RJR Nabisco, Inc. Secs. Litig.*, Nos. MDL No. 818 (MBM), 88 Civ. 7905 (MBM), 1992 WL 210138, at *4, 1992 U.S. Dist. LEXIS 12702, at *12 (S.D.N.Y. Aug. 24, 1992) (court "should give deference, when considering the fairness of the proposed settlement, to the judgment of experienced class counsel"); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (holding that in analyzing a class settlement, a trial court may rely on the judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"). Also significant is the fact that Michaels and its counsel support this Settlement. *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y. 1969) (the Court may consider the views of all involved counsel when deciding whether to approve a settlement).

responsibly ignore the risk that this Court or a reviewing court might not accept all of their arguments.

There are also the risks inherent in the class certification motion practice that would be scheduled to ensue in due course. Additionally, there are other risks and uncertainties relating to liability and proof of compensable damages on a class-wide basis. These litigation risks, coupled with the substantial material benefits the Settlement will garner for Settlement Class Members, weigh in favor of final approval of the Settlement.

Also, the sheer amount of time it will take to litigate the case to conclusion weighs in favor of accepting the Settlement now.[7] Under this Settlement, the Settlement Class will realize substantial and immediate benefits once the Settlement is approved. Indeed, the benefits of enhanced notice of the Compromise and credit monitoring services to Class Members affected by it diminish with the passage of time. Without the Settlement and with continued and protracted litigation, each Class Member who wanted credit monitoring services would be required to pay for those services on the open market at a cost of approximately $15 per month. They would do so in the hope that down the road all or some of this money will be returned in the form of damages from this case.

The Settlement alleviates this burden right now, and with certainty. Settlement Class members who have Unreimbursed Claims can receive a full monetary recovery from the Settlement Fund. Also, every Settlement Class Member who files a claim is entitled to at least

---

[7] This case concerns an emerging area of the law regarding data breaches, thus it is almost assured that a decision in Plaintiffs' favor on the merits would be appealed, which would cause further delay in realizing benefits for the Class. *See Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 634-35 (7th Cir. 2011) (affirming final approval of class settlement over objectors' appeal and finding that district court properly considered that "[t]he prospect of appellate review affects the risk and costs (in time and money) of the litigation."; *LiPuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) ("[A]ny resolution favorable to Plaintiffs would certainly be followed by appellate proceedings delaying class recovery. All of these uncertainties in outcome strongly favor approval of negotiated settlement.").

one year of credit monitoring services, and Settlement Class Members who have Unreimbursed Claims or experienced Fraudulent Charges are entitled to two years of credit monitoring services. At $15 per month on the retail market, comparable credit monitoring services would cost Settlement Class Members approximately $170 annually.[8]  Thus, the total available benefit to Settlement Class members for just one year of the credit monitoring services being offered is valued at $16,150,000 (based on 95,000 Settlement Class Members x $170).  And the duration of the credit monitoring services will be doubled for each Settlement Class Member in the event that some of the initial $600,000 in the Settlement Fund goes unused.  Moreover, Michaels' customers will receive adequate notice of the Compromise through the settlement notification process.  And, through representations in the Settlement Agreement which have been verified through confirmatory discovery, Michaels provided additional benefits to the Settlement Class by verifying new prophylactic measures concerning PIN Pad security and confirming containment of the Compromise.  Finally, Michaels has agreed to pay the attorneys' fees separately up to a capped limit.  Thus, this cost typically associated with class relief will be borne by Defendant.

It is highly unlikely that Plaintiffs would be able to obtain a better outcome in this case even after a trial on the merits.  Moreover, that recovery would be years in the future, at significantly greater expense to the Class.  There is a significant risk that the Class would receive less or nothing at all if litigation proceeded to the bitter end.  This first factor – which the Seventh Circuit has reiterated is "the most important" one, *Isby*, 75 F.3d at 1199; *Hiram Walker*, 768 F.2d at 889 – weighs strongly in favor of approving the Settlement because the putative class would receive substantial monetary benefits despite Michaels' arguments in its motions to

---

[8] This does not mean that the offered credit monitoring services are costing Michaels this much per annum.

dismiss. As a factual matter, it is clear that the Compromise occurred in Michaels retail stores and that the Compromise affected tens of thousands of its customers. Indeed, several of the skimmers have been convicted for their roles in connection with the unauthorized withdrawals in this case. But the legal questions such as whether Michaels had a contractual obligation to Plaintiffs to protect their PII remain. Similarly, it is beyond dispute that Michaels did provide some notice of the Compromise to some Class Members. However, the legal question as to whether the notice was sufficiently disseminated and comprehensive remains unresolved. Unless these questions are decided in favor of Plaintiffs, this case could fail on the merits.

In sum, a comparison of the many obstacles to success on the merits in this class action against the monetary and other benefits contemplated by the Settlement Agreement supports the conclusion that this Settlement is fair, reasonable and adequate.

### B. The Complexity, Length, And Expense Of Continued Litigation If The Settlement Is Not Approved

The proposed Settlement makes final decision on several disputed factual and legal issues unnecessary. Moreover, if the case had not settled, the expenses of continued litigation would also have been significant. Costs of testifying experts on data security and notice dissemination, discovery, class certification and summary judgment motion practice, as well as pre-trial and trial and likely ensuing appeals, would have been substantial. Also, in the event that the Court would conclude that it could not certify a nationwide class, the likely result would be independent proceedings in various states. Indeed, the individual actions comprising the Consolidated Action were initially filed in different states. Furthermore, the trial and any appeals could take years to resolve. This Settlement provides a reasonably prompt resolution with meaningful relief to all Settlement Class Members without these additional major expenditures of time and money. Therefore, this factor weighs in favor of final approval.

### C. There Were Zero Objections And Only Two Opt-Outs To The Settlement

On December 19, 2012, this Court granted preliminary approval of the Settlement and approved the Settlement's notice plan. Dkt. 89, ¶ 7. The Court-approved notice plan was carried out. Following notification, there has been no opposition to the Settlement. Moreover, only two Class Members have opted out of the Settlement. Thus, this factor strongly weighs in favor of final approval.

### D. There Was No Collusion In Obtaining The Settlement

Courts generally presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion in the absence of evidence to the contrary. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325. This presumption is applicable here. The Settlement was reached only after a private mediation followed by continued, protracted and often spirited arm's-length negotiation by experienced counsel. This Settlement is not the result of collusion between the parties to compromise the rights of absent class members. To the contrary, notwithstanding the many impediments to recovery by the Class, the Plaintiffs and Michaels have reached a settlement that would result in the all Settlement Class Members getting certain, immediate and meaningful benefits.

Negotiations began after Plaintiffs' CACAC had largely survived a vigorously contested motion to dismiss. Furthermore, the Seventh Circuit has made clear that there is nothing untoward about "settlement discussions [that] beg[i]n at an early stage in the litigation" of a class action. *Isby*, 75 F.3d at 1200 (approving settlement). As noted above, the settlement negotiations were difficult and protracted, started only after certain legal issues were clarified by the ruling on the motion to dismiss, and extended over approximately nine (9) months, during which time Plaintiffs obtained confirmatory discovery and utilized the assistance of an

experienced and respected mediator, the late Hon. Nicholas H. Politan (Ret.). Of course, Plaintiffs were kept apprised of the negotiations, and they have consented to the Settlement. The Settlement is thus not the product of collusion in any way. This factor also weighs in favor of final approval.

### E. The Stage Of The Proceedings And The Amount Of Investigation And Discovery Completed When Settlement Was Achieved

The last factor to be considered by the Court, is the stage of the proceedings and the amount of discovery completed. "This factor is relevant because it determines 'how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims.'" *Schulte,* 805 F. Supp. 2d at 587 (internal citations omitted).

Class Counsel conducted a detailed investigation into the facts and law relating to the matters alleged in the original complaints. Marchese Decl., ¶ 8. Moreover, the Settlement comes after Plaintiffs consulted with an expert in data security and filed the CACAC. *Id.* ¶¶ 28, 39, 41. In addition, Plaintiffs' claims survived a hard-fought motion to dismiss, which helped the parties to evaluate the relative merit of their claims and defenses. *Id.* ¶¶ 42-44. Over a nine month period, Plaintiffs and Class Counsel conducted intensive arm's-length negotiations with Michaels through mediation, numerous telephonic conferences and the exchange of numerous written proposals. Through Class Counsel, Plaintiffs also conducted informal discovery concerning the size of the Class and the number of Class members whose bank accounts were subject to unauthorized withdrawals, which allowed them to set an estimated value on the monetary benefit to be received by the Settlement Class. *See* Manual for Complex Litigation (Fourth) at § 11.423 (2004) (noting that informal discovery is a recognized method of minimizing the cost, delay and burden associated with formal discovery). Moreover, the parties exchanged initial disclosures and served formal written discovery requests, and Class Counsel

was given access to and reviewed confirmatory discovery before entering into the Settlement. Therefore, actual litigation – rather than the mere threat of litigation – informed the settlement negotiations. Thus, this factor weighs in favor of final approval.

## V. THE COURT APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS

The parties effectuated class notice in a reasonable manner that was calculated to reach as many class members as possible who would be bound by the Settlement. In this case, individual notice to each Settlement Class Member was not possible because their identities were not known to either Plaintiffs or Michaels. Accordingly, Judge Kocoras agreed that in these circumstances, individual notice was not feasible, *see* Dkt. 89 (Preliminary Approval Order) at 7, and further approved the parties' five-component notice plan. Under the circumstances, this provided the best notice practicable to apprise the Settlement Class of the pendency of this Lawsuit, afforded them an opportunity to opt out of or present any objections to this Settlement, and complied fully with due process, as already found in the Preliminary Approval Order. *Id.*

The approved notice plan was fully implemented. First, the Settlement Administrator ran two quarter-page advertisements (which had been previously submitted to the Court as an Exhibit to the Stipulation) in the Monday through Thursday editions of *USA Today*, first on January 10 and again on January 14, 2013. Declaration of Settlement Administrator (hereinafter, "*Garcia Decl.*", attached hereto as Exhibit A) ¶ 3(i). Second, the Settlement Administrator created a website where potential Settlement Class Members could obtain detailed information about the Settlement, including a detailed Settlement Notice, a list of stores at which the Compromise occurred, the claim form, and the Settlement documents. *Id.* ¶ 3(g). Third, Michaels provided a link on the front page of its website, www.michaels.com, to the Settlement Administrator's website allowing any visitors to Michaels' website to easily information regarding the Settlement. Fourth, for a 90-day period, Michaels provided a lengthy notification

on all receipts in the eighty-six (86) affected stores. Fifth, for the same 90-day period, Michaels posted the identical language of the receipt notice in each of the eighty-six (86) affected stores. *Id.* ¶ 3. Thus, all Settlement Class Members have had numerous opportunities to have been notified of the Settlement.

The Seventh Circuit has held that where, as here, "individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute." *Mirfasihi v. Fleet Mortg. Corp.,* 356 F.3d 781, 786 (7th Cir. 2004). The Seventh Circuit has also approved the use of websites to provide putative class members with notice, holding that the "World Wide Web is an increasingly important method of communication, and . . . an increasingly important substitute for newspapers." *Id.* (finding that notice in the form of publication and a website maintained by the settlement administrator was adequate; reversing and remanding on other grounds). Indeed, in light of *Mirfasihi,* the combination of publication notice in *USA Today* and website notice alone in this action would have been sufficient. However, the notice plan here went much further, including not only publishing twice in a national newspaper and a website, but also a link on Michaels' website, receipt notice and store postings. Rule 23 and due process are clearly satisfied. *See, e.g., Rogers v. Khatra Petro, Inc.,* No. 2:08 cv 294, 2011 WL 611873, at *2 (N.D. Ind. Feb. 14, 2011) (approving class notice that provided a combination of publication notice, website posting and summary notice at the defendant's gasoline pumps and inside the store; noting that "publication and website posting alone are likely sufficient to satisfy Rule 23" and, thus, the summary notice posted on the pumps was "supplemental" and "provide[d] sufficient information for potential class members to identify themselves and who to contact").

And there is proof that the Court-approved notice plan was successful in reaching the Settlement Class Members. The *USA Today* publication notices were published on January 10,

2013 and January 14, 2013.  Garcia Decl., ¶ 3(i).  As of March 15, 2013, there have been more than 36,000 visits to the Settlement Administrator's website, more than 65,000 page views, and more than 100,000 total hits.  *Id.* ¶ 13.[9]  Further, the Settlement Administrator has received more than 800 calls regarding the Settlement, and 289 requests for mailed class notices and claim forms.  *Id.* ¶ 14.  This is in addition to telephone calls made by Settlement Class Members to Class Counsel to inquire about the Settlement.  Marchese Decl., ¶ 8.  Finally, as of March 15, 2013, the Settlement Administrator had received two requests for exclusion in connection with the notice plan.  Garcia Decl., ¶ 10. These numbers clearly indicate that the Settlement Class Members received the best notice practicable under the circumstances.

Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due-process requirements.

## VI.  CONCLUSION

For all the reasons stated above and in the accompanying declarations and forthcoming motion for final approval, Class Counsel respectfully request that the Court grant final approval of the Settlement and certify the Settlement Class.

Dated:  March 22, 2013                                  Respectfully submitted,

                                                        **GRANT & EISENHOFER P.A.**

                                                        By: /s/  Adam J. Levitt

                                                        Adam J. Levitt
                                                        Edmund S. Aronowitz
                                                        30 North LaSalle Street, Ste. 1200
                                                        Chicago, Illinois  60602
                                                        Tel: 312-214-0000
                                                        Fax: 312-214-0001
                                                        alevitt@gelaw.com
                                                        earonowitz@gelaw.com

---

[9] Even if there are repeat visits, the number of visitors to the website is significant given that Class Counsel estimates 95,000 Settlement Class Members.

Scott A. Bursor (*pro hac vice*)
Joseph I. Marchese (*pro hac vice*)
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York  10019
Tel:  212-989-9113
Fax:  212-989-9163
scott@bursor.com
jmarchese@bursor.com

Anthony Vozzolo (*pro hac vice*)
Christopher Marlborough
**FARUQI & FARUQI, LLP**
369 Lexington Ave., 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
avozzolo@faruqilaw.com
cmarlborough@faruqilaw.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2013, a copy of the foregoing document was filed electronically using the CM/ECF System. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. In addition, a copy of the foregoing was served on the following via electronic mail:

David J. Disabato (ddisabato@disabatolaw.com)
Disabato & Bouckenooghe LLC
8 Mansfield Court
Mendham, New Jersey 07945
973-813-2525

***Counsel for Plaintiff Lori Wilson***

By: /s/ Edmund S. Aronowitz
Edmund S. Aronowitz