# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| IN RE MICHAELS STORES PIN PAD LITIGATION<br><br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br><br>This Documents Relates to All Actions | Case No. 1:11-cv-03350<br><br><u>CLASS ACTION</u><br><br>Honorable Thomas M. Durkin |

## MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, <u>AND INCENTIVE AWARDS</u>

Dated:  March 22, 2013

**TABLE OF CONTENTS**

PAGE(S)

PRELIMINARY STATEMENT ................................................................................................ 1

THE PROPOSED SETTLEMENT......................................................................................... 3

LEGAL ARGUMENT............................................................................................................ 4

I.     THE PROPOSED ATTORNEYS' FEE AWARD IS JUSTIFIED ...................................... 4

     A.     The Requested Award For Attorneys' Fees Is Reasonable Under
The Percentage Of The Class Benefit Approach ....................................... 5

          1.     Attorneys' Fee Awards In Other Class Action Cases................................. 7

          2.     Agreement Between Plaintiffs And Their Counsel ..................................... 9

          3.     The Risk Of Nonpayment ...................................................................... 9

          4.     The Quality Of Class Counsel's Performance ............................................ 10

          5.     The Amount Of Work Necessary To Resolve This
Litigation................................................................................................ 12

          6.     The Stakes Of This Litigation .................................................................. 13

     B.     The Requested Award For Attorneys' Fees Is Reasonable Under
The Lodestar Method ................................................................................ 13

     C.     The Requested Award For Attorneys' Fees Is Reasonable and
Justified as a Matter of Public Policy ....................................................... 16

II.     CLASS COUNSEL SHOULD BE REIMBURSED FOR REASONABLY
INCURRED LITIGATION COSTS AND EXPENSES ..................................................... 17

III.     THE REQUESTED INCENTIVE AWARDS TO REPRESENTATIVE
PLAINTIFFS ARE PROPER .............................................................................................. 17

CONCLUSION.................................................................................................................... 18

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Blum v. Stenson,*
    465 U.S. 886 (1984) ................................................................................... 14

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ..................................................................................... 4

*City of Greenville v. Syngenta Crop Prot., Inc.,* No. 3:10-cv-00188-JPG-PMF,
    2012 U.S. Dist. LEXIS 151819 (S.D. Ill. Oct. 23, 2012) ................................. 13, 14

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) ...................................................................... 14, 17

*Dolgow v. Anderson,*
    43 F.R.D. 472 (E.D.N.Y. 1968) ..................................................................... 16

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,*
    37 F.R.D. 240 (S.D. Ohio 1991) ................................................................... 17

*Florin v. NationsBank of Ga., N.A.,*
    34 F.3d 560 (7th Cir. 1994) ........................................................................... 5

*Gaines v. Sears, Roebuck & Co.,*
    No. 76-C-310, 1980 U.S. Dist. LEXIS 11158 (N.D. Ill. Apr. 9, 1980) ................. 5

*Gaskill v. Gordon,*
    160 F.3d 361 (7th Cir. 1998) .......................................................................... 8

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43, 54 (2d Cir. 2000)....................................................................... 9

*Goldsmith v. Tech. Solutions Co.,*
    No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ........................... 8

*Hall v. Cole,*
    412 U.S. 1 (1973)........................................................................................... 4

*Harman v. Lyphomed, Inc.,*
    945 F.2d 969 (7th Cir. 1991) .......................................................................... 15

*In re Brand Name Prescription Drugs Antitrust Litig.,*
    No. 94 C 897, 2000 WL 204112 (N.D. Ill. Feb. 9, 2000)................................... 15

*In re Cenco, Inc. Sec. Litig.,*
    519 F. Supp. 322 (N.D. Ill. 1981) .................................................................. 15

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) .......................................................................... 5, 8

*In re Domestic Air Transportation Antitrust Litigation*,
  148 F.R.D. 297 (N.D. Ga. 1993) ............................................................... 17

*In re Dun & Bradstreet Credit Services Customer Litigation*,
  130 F.R.D. 366 (S.D. Ohio 1990) ............................................................. 17

*In re King Res. Co. Sec. Litig*,
  420 F. Supp. 610 (D. Colo. 1976) ............................................................. 11

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ............................................................. 7, 8, 9

*In re Transunion Corp. Priv. Litig.*,
  629 F.3d 741 (7th Cir. 2011) ...................................................................... 9

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)............................................................ 11

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981) .................................................................... 9

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ...................................................................... 8

*Langendorf v. Conseco Senior Health Ins. Co.*,
  No. 08-CV-3914, 2009 U.S. Dist. LEXIS 131289 (N.D. Ill. Nov. 18, 2009) ..................... 5, 13

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970)..................................................................................... 4

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986)................................................................................... 14

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
  No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .................................. 7

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................... 14

*Skelton v. General Motors Corp.*,
  860 F.2d 250 (7th Cir. 1988) ................................................................... 14

*Spicer v. Chi. Bd. Options Exch., Inc.*,
  844 F. Supp. 1226 (N.D. Ill. 1993) ........................................................ 17

*Sutton v. Bernard*,
  504 F.3d 688 (7th Cir. 2007) ...................................................................... 4

*Taubenfeld v. Aon Corp.*,
  415 F.3d 597 (7th Cir. 2005) ................................................................. 7, 8

*Teamsters Local Union No. 604 v. Inter–Rail Transp., Inc.*,
  No. 02-cv-1109-DRH, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004) ........................... 8

*Williams v. Rohm and Haas Pension Plan, et al,*
   658 F.3d 629 (7th Cir. 2011) ............................................................................ 1, 8, 12

**STATUTES**

15 U.S.C. § 1693 ............................................................................................................ 6

15 U.S.C. § 1693f ........................................................................................................... 6

15 U.S.C. § 1693g(a)(1)................................................................................................. 6

Plaintiffs Mary Allen, Kelly M. Maucieri, Brandi Ramundo, Adrianna Sierra, Fred Sherry, Sara Rosenfeld, Ilana Sofer, Lori Wilson, Jeremy Williams and Kimberly M. Siprut (collectively, "Plaintiffs" or "Class Representatives") and Class Counsel Adam J. Levitt, Scott A. Bursor, and Anthony Vozzolo (collectively, "Class Counsel") respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees, reimbursement of their litigation costs and expenses, and payment of "incentive" or "service" awards to the Class Representatives. As will be detailed in Plaintiffs' simultaneously filed motion in support of final approval of the proposed class settlement and in the attorneys' declarations filed in connection herewith, through their substantial efforts, Class Counsel have obtained a significant recovery for the Settlement Class, as embodied in the Class Action Settlement Agreement, dated December 7, 2012 (the "Settlement Agreement"). The proposed Settlement, which is tailored to the unique facts of this litigation, will provide Settlement Class Members[1] with direct and immediate monetary reimbursement for unreimbursed out-of pocket monetary losses or fees sustained in connection with the Compromise, and with up to four years of three-bureau credit monitoring services having a market value of approximately $15 per month, or $170 per annum, per Settlement Class Member.[2] Thus, the total available benefit to Settlement Class Members for just one year of the credit monitoring services being offered is valued at $16,150,000 (based on 95,000 Settlement Class Members x $170). The Settlement also provides additional benefits to the Settlement Class in the form of verification of remedial and prophylactic measures Michaels has taken to confirm containment of the Compromise that gave rise to this litigation and to

---

[1] Capitalized terms that are not defined herein shall have the meaning assigned in the Settlement Agreement.

[2] *See, e.g.,* www.experian.com/consumer-products/credit-monitoring.html showing monthly credit monitoring pricing of $4.95 for the first month and $14.95 for each additional month (last visited May 20, 2013).

strengthen PIN Pad security for Settlement Class Members who choose to continue shopping at Michaels following the Compromise.[3]

Pursuant to the terms of the Settlement, Michaels has also agreed to pay to Class Counsel, subject to Court approval, attorneys' fees in the amount of $1,200,000 and reimbursement of Plaintiffs' litigation expenses of up to $100,000. Michaels agreed to pay this attorneys' fee award in recognition of the substantial benefits achieved in this litigation as well as the contingent nature of the litigation, the skill with which Class Counsel litigated the actions, and the fees typically awarded by courts across the country in similar litigation. Class Counsel and Michaels negotiated the fees and expenses only after reaching agreement on the other principal terms of the Settlement. *See* Declaration of Joseph Marchese in Support of Class Counsel's Motion for Final Approval of Settlement and for an Award of Attorneys' Fees, Costs and Expenses, and Class Representative Incentive Awards ("Marchese Decl."), ¶¶ 13, 71.

Class Counsel have litigated this matter on a fully contingent basis and have funded the litigation expenses and costs. The requested award of $1,200,000 for attorneys' fees represents a modest multiplier of Class Counsel's aggregate lodestar, which is fair and reasonable pursuant to Seventh Circuit authority and methods of analysis.[4] Class Counsel have vigorously prosecuted this action since its inception and succeeded in obtaining a meaningful recovery for Settlement Class members tied to provable damages and litigation risks, and now seek to be compensated for their efforts. All expenses were carefully and reasonably expended and should be reimbursed and all Class Representatives have given of their time and effort to contribute to the successful

---

[3] Confirmatory discovery relating to the Settlement indicated that Michaels has a significant repeat customer base. For example, the aggregate total of captured payment card numbers from the Compromise exceeded 192,000, but just less than 95,000 of those numbers were unique.

[4] The reasonableness of Class Counsel's fee, cost, and expense request is supported by both the percentage of the fund method and the lodestar approach, which is appropriate to consider in this case, where the Settlement provides both cash and significant non-monetary relief.

resolution of this case. Plaintiffs and Class Counsel thus respectfully request that their application for an award of attorneys' fees and costs and approval of incentive awards be granted.

## THE PROPOSED SETTLEMENT

The Settlement resolves the claims of all customers who purchased items at a Michaels store location from January 1, 2011 to May 12, 2011 whose Payment Card was swiped at one of the Tampered PIN Pad Terminals across 86 store locations. More than 192,000 Payment Card numbers were captured as a result of the Compromise, and approximately 95,000 of those were at-risk unique numbers, indicating that a significant number of Settlement Class members are repeat customers of Michaels.

The Settlement Agreement provides relief to the Settlement Class by, among other things, requiring Michaels to create a $600,000 non-reversionary monetary fund to pay for (a) Unreimbursed Claims and (b) not less than one year of credit monitoring services for Settlement Class members, or not less than two years of credit monitoring services for Settlement Class members who have Unreimbursed Claims and/or suffered Fraudulent Charges. Following the conclusion of the claims process, if there are sufficient funds in the monetary fund to extend credit monitoring services to all Settlement Class members who have requested it, and if there are remaining unused monies over and above the purchase price for such services, then the term of the credit monitoring services being offered will be increased to two years for Settlement Class members and four years for Settlement Class members with Unreimbursed Claims and/or Fraudulent Charges. Thereafter, any unused portion of the initial $600,000 will be subject to a *cy pres* distribution to the not-for profit Starlight Children's Foundation.[5] Alternatively, if the total payments of valid claims would cause the total payments from the fund to exceed the initial

[5] The Starlight Children's Foundation is a global children's charity that offers services to improve the life and health of kids and families who are battling serious childhood illness.

$600,000 contribution, then Michaels will make an Additional Payment into the fund not to exceed $200,000, thereby increasing the total fund amount to $800,000.

The Settlement Agreement also provides relief to Settlement Class Members in the form verification of remedial and prophylactic measures Michaels has taken to confirm containment of the Compromise and to strengthen PIN Pad security for Settlement Class Members who choose to continue shopping at Michaels since the Compromise. These measures include the replacement of the model of the compromised PIN Pads in Michaels' United States stores with new PIN Pads that have been certified compliant with Payment Card Industry PIN Transaction Security standards having a sunset date of no earlier than 2014.

## LEGAL ARGUMENT

I.  ## The Proposed Attorneys' Fee Award Is Justified

In order to prevent unjust enrichment, federal courts have long recognized the power to award attorneys' fees when "successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *Hall v. Cole*, 412 U.S. 1, 4 (1973), quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (citation and quotations omitted).

Class Counsel have created a substantial benefit for the Settlement Class by securing Michael's commitment to provide remedial measures and a $600,000 non-reversionary monetary fund (with the potential to increase to $800,000) to pay for Unreimbursed Claims as well as credit monitoring services for Settlement Class Members valued between $170 per Class Member per year. As a result of the Settlement, Michaels also made representations of steps taken to contain the Compromise and to enhance PIN Pad security, thereby providing additional

non-monetary benefit to Class Members. Michaels further provided Class Counsel with information sufficient to confirm that the steps that it represented had actually been performed. Under governing Seventh Circuit standards and the Class Action Fairness Act, Class Counsel are entitled to a reasonable award of fees for their successful efforts.

Under Seventh Circuit standards, a District Court may award attorneys' fees under either the "lodestar" method or the "percentage-of-the-benefit" method. *Florin v. NationsBank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) ("*Florin I*"). Although the percentage method has certain advantages, *see In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting that it is easier to establish marketplace contingency fee percentages "than it would be to hassle over every item or category of hours and expense and what multiple to fix and so forth."), courts may use the lodestar method particularly where a settlement provides significant equitable or injunctive relief that may be difficult to value. *See Langendorf v. Conseco Senior Health Ins. Co.*, No. 08-CV-3914, 2009 U.S. Dist. LEXIS 131289, *30 (N.D. Ill. Nov. 18, 2009); *see also Gaines v. Sears, Roebuck & Co.*, No. 76-C-310, 1980 U.S. Dist. LEXIS 11158, at *8 (N.D. Ill. Apr. 9, 1980) ("[T]he benefit obtained for the class must still be a major factor in determining the maximum limit on fees.").

A. **The Requested Award For Attorneys' Fees Is Reasonable Under The Percentage Of The Class Benefit Approach**

Although the Settlement does not create a common fund *per se*, the percentage of the fund method supports the reasonableness of Class Counsel's fee, cost, and expense request as the Settlement makes significant monetary benefits and valuable non-cash services available to Settlement Class Members. From a non-reversionary fund of not less than $600,000 and as high as $800,000, the Settlement provides cash relief for unreimbursed out-of pocket monetary losses or fees sustained in connection with the Compromise and up to two years of three-bureau credit monitoring services having a market value of approximately $170 per annum per Settlement

Class Member. Payments from the fund to Settlement Class Members are structured such that Class Members' unreimbursed out-of-pocket monetary losses are paid, in full, and the additional benefit of credit monitoring services – compensating Class Members' for damages beyond their directly measurable out-of-pocket losses – are provided second. Because many Class Members' direct monetary losses were wholly or partially reimbursed by third parties,[6] the fund will be sufficiently large to provide full monetary reimbursement of Unreimbursed Claims – and any shortfall triggers the contribution of up to an additional $200,000 by Michaels into the fund. The fund also provides monies for up to four years of credit monitoring services to all Class Members with valid claims. The estimated potential retail market value of just one year of the credit monitoring services being made available to Settlement Class Members approximates $16,150,000 (i.e. 95,000 Settlement Class Members, based on the approximate number of unique card numbers affected by the Compromise, multiplied by $170, the market value of one year of credit monitoring). The value of the credit monitoring services to Settlement Class Members is significantly greater than the volume-discounted cost of the credit monitoring to Michaels and constitutes a meaningful benefit for all Class Members impacted by the Compromise, including both those with and without unreimbursed losses. Based on this dollar value of the credit monitoring services component of the Settlement, Class Counsel' fee request of $1,200,000 represents approximately 7.5% of the potential retail market value of the available settlement benefits from just one year of the credit monitoring service, which is a significantly smaller

---

[6] The Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*., requires financial institutions to correct errors in consumer accounts caused by unauthorized electronic fund transfers and further limits consumer liability for unauthorized electronic funds transfers to $50 in most circumstances. *See* 15 U.S.C. § 1693f; 15 U.S.C. § 1693g(a)(1).

percentage than other attorneys' fee awards approved in other class actions by courts in this Circuit.[7]

"[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases). To do so, a court "must estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* A court should consider the following elements when conducting its analysis: attorneys' fee awards in other class action settlements; any fee agreements between the parties; the risk of nonpayment counsel agreed to bear; the quality of class counsel's performance; the amount of work necessary to resolve the litigation; and the stakes of the case. *See Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Each of these factors is readily satisfied here.

### 1. Attorneys' Fee Awards In Other Class Action Cases

A court should consider attorneys' fee awards in other class actions when assessing a fee request. *See Taubenfeld*, 415 F.3d at 601. The Settlement, if approved, will provide Settlement Class Members with direct and immediate monetary reimbursement for unreimbursed out-of-pocket monetary losses or fees sustained in connection with the Compromise, and with up to four years of three-bureau credit monitoring services having a market value of approximately $170 per annum per Settlement Class Member. The Settlement also provides additional benefits to the Settlement Class in the form of representations Michaels has made that confirm containment of

---

[7] It has been stated that in commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements, which result in a fee of between 33.3% and 40% of the recovery. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (citing *Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986).

the Compromise and improve PIN Pad security for Settlement Class Members who continue to shop at Michaels.

While it is impossible to determine with absolute certainty the actual settlement value to the Settlement Class, the estimated potential retail market value of just one year of the credit monitoring services being made available to Settlement Class Members approximates $16,150,000, *see supra* at 6. That value can be achieved and leveraged through the settlement monetary fund at a small fraction of the retail market cost to a consumer**.** As such, Class Counsel' fee request of $1,200,000 represents approximately 7.5% of the potential retail market value of the available settlement benefits from just one year of the credit monitoring service, which is a significantly smaller percentage than other attorneys' fee awards approved in other class actions by courts in this Circuit. *See Teamsters Local Union No. 604 v. Inter–Rail Transp., Inc.,* No. 02-cv-1109-DRH, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action in [sic] not uncommon"); s*ee also Williams v. Rohm and Haas Pension Plan*, *et al*, 658 F.3d 629, 633 (7th Cir. 2011), 2011 WL 3874460, at *2 (affirming district court's award of 24.17% of the total settlement); *Taubenfeld*, 415 F.3d at 601 (affirming district court's award of 30% of a $7.5 million settlement fund); *In re Synthroid Mktg. Litig.*, 325 F.3d 974 (7th Cir. 2003) (affirming the district court's award of 30% of the first $10 million to counsel representing the consumer class); *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (affirming district court's award of 38% of a common fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) (33 1/3%); *see also Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) (noting that the customary contingency fee ranges from 33 1/3% to 40% of the amount recovered).

And the above calculations do not account for the additional, albeit non-monetary, value provided by Michaels' verification of remedial and prophylactic measures that confirm containment of the Compromise and strengthen PIN Pad security for Settlement Class Members continue shopping at Michaels. Furthermore, if the Court were to attempt to recreate the market price for Class Counsel's services, *see, e.g.*, *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 573, there is no doubt that Class Counsel's fee request of 7.5% of the value provided to Settlement Class Members is eminently reasonable. The general practice is that consumer class action cases are taken on a contingent fee basis. It is also common that the contingent fee is often between 30% and 40%, with 33% (one-third) being the norm. Thus, Class Counsel's request for attorneys' fees in the amount of 7.5% of the value to the Settlement Class is well within the range of other similar cases within this District and well below the market price for contingent fee consumer class action cases.

### 2. Agreement Between Plaintiffs And Their Counsel

A court should consider an actual agreement between the parties when assessing a fee request. *See In re Synthroid Mktg. Litig.*, 264 F.3d at 718. Given that this matter is a consumer class action, the client representation agreements between Plaintiffs and their counsel provide for legal services to be provided on a contingent basis and to be determined by the Court. Therefore, this factor supports Class Counsel's fee request.

### 3. The Risk Of Nonpayment

At the outset of this litigation, Class Counsel agreed to represent their clients on a contingency basis knowing that there was a real possibility that these cases could be litigated for years with no recovery for the time and effort expended in furtherance of the matter. *See In re Transunion Corp. Priv. Litig.*, 629 F.3d 741, 746 (7th Cir. 2011) (stating that "within the set of colorable legal claims, a higher risk of loss does argue for a higher fee"); *Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000) ("[A]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award.") (citation and quotation omitted); *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.").

As detailed herein, if this matter were litigated to conclusion, Plaintiffs would have to prevail at the class certification stage and then prove the merits of their case. As evidenced by Michaels' motion to dismiss, the defendant had every intention of aggressively litigating this case from the start. The possibility of settlement was at best uncertain at the outset of this matter, and it remained uncertain after Michaels' motion to dismiss was denied. Only after additional litigation, including service of formal discovery, and after many months of good faith, arm's length negotiations did this Settlement take shape.

### 4. The Quality Of Class Counsel's Performance

A high level of skill was required to prosecute these matters for nearly two years. Class Counsel faced tenacious opposition from Michaels and its counsel who fought vigorously throughout this litigation. Despite the risks and obstacles facing them, Class Counsel were able to negotiate a Settlement that confers immediate substantial benefits on the Settlement Class Members, which consists of tens of thousands of individual consumers.

Class Counsel respectfully submit that they conducted themselves in this action in a professional, diligent, and efficient manner. Tasks were allocated to prevent "over-lawyering" and inefficiency. The bulk of the work was performed by a small number of attorneys fully familiar with the factual and legal issues presented by this litigation and highly experienced in the area of consumer protection class action litigation generally, and privacy and data breach litigation specifically. This division of labor permitted the work to be done efficiently, resulting

in an economy of service and avoiding duplication of effort. Class Counsel devoted enormous time and money to the prosecution of these actions. Among other things, to achieve this Settlement, Class Counsel took the following litigation actions: (1) conducted an extensive pre-suit investigation that laid the groundwork for a strong Consolidated Amended Class Action Complaint ("CACAC"), Marchese Decl., ¶ 8; (2) self-organized and coordinated their combined legal talents for the benefit of the Settlement Class, *Id*. ¶¶ 24-27; (3) retained a prominent information assurance and forensic computing consulting firm, for consultation, advice, and litigation support concerning the consolidated actions, *Id.* ¶ 28; (4) proposed a 27-point list of meaningful PIN pad security and policy measures that Michaels should implement for the benefit of the Settlement Class, *Id.* ¶ 40; (5) filed a comprehensive CACAC that survived Michaels' motion to dismiss, which Class Counsel opposed with a thoroughly researched memorandum in opposition, *see* Dkt. No. 56, Memo. Opn. at 8; Marchese Decl. ¶¶ 41-44; (6) moved for class certification on behalf of the proposed class, Marchese Decl. ¶ 45; (7) engaged in a full-day mediation with defense counsel before the late Judge Nicholas Politan, *Id.* ¶¶ 46-48; (8) conducted a Rule 26(f) conference, exchanged initial disclosures with defense counsel, and filed a joint proposed case management order with the Court, *Id.* ¶ 51; (9) served formal document requests, interrogatories, and a notice of Rule 30(b)(6) deposition on Michaels, *Id.* ¶ 53; (10) participated in numerous settlement negotiation conferences with defense counsel, *Id.* ¶ 55; (11) reviewed confirmatory discovery from Michaels in furtherance of the Settlement, *Id.*; and (12) fielded calls from Settlement Class Members who inquired about the Settlement, *Id.* ¶ 8.

Class Counsel have a national reputation for the successful prosecution of complex class action litigation. *See* Firm Resumes attached to Marchese, Vozzolo and Levitt Declarations. As set forth above, the services provided by Class Counsel were rendered expeditiously and efficiently, reflecting their knowledge and practical experience in litigating claims of this nature.

Their expertise was the primary factor, we submit, in bringing about the expeditious resolution of this litigation on extremely favorable terms for the Settlement Class.

The quality of opposing counsel is also an important factor in evaluating the quality of the services rendered by Class Counsel. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re King Res. Co. Sec. Litig*, 420 F. Supp. 610, 634 (D. Colo. 1976). Defendant Michaels was vigorously represented by a prestigious, capable, and diligent law firm – Hunton & Williams – which has been listed among the top 30 law firms by BTI Consulting Group's Annual Survey of Corporate Counsel at Fortune 1000 Companies for seven of the last twelve years. Moreover, Hunton & Williams has been specifically recognized in the 2013 edition of Data Protection for its successful work in the fields of data protection and information technology. *See* www.hunton.com/awards/ (last visited March 20, 2013). The ability of Class Counsel to obtain such favorable results in the face of formidable legal opposition further evidences the superior quality of their work and of the proposed Settlement.

The awareness of Defendant's counsel that several leading nationwide plaintiffs' law firms were willing and able to assume the risk of prosecuting this action to trial, if necessary, rather than accept an unsatisfactory settlement, unquestionably contributed to the favorable result obtained here. Class Counsel's efforts on behalf of the Settlement Class and their ability to achieve this Settlement is a testament to their skill and professionalism.

### 5.  The Amount Of Work Necessary To Resolve This Litigation

Class Counsel have reported having spent approximately 1667.65 hours advancing these matters. *See* Marchese Decl., ¶ 108; Declaration of Adam J. Levitt ("Levitt Decl."), attached hereto as Exhibit A, ¶¶ 10, 16; Declaration of Anthony Vozzolo ("Vozzolo Decl."), attached

hereto as Exhibit B, ¶ 11.[8]  Additionally, Class Counsel and other plaintiffs' counsel will spend time preparing for and appearing at the Fairness Hearing and overseeing the Settlement to its conclusion.  Accordingly, this factor also favors approval of the requested award of attorneys' fees.

### 6.     The Stakes Of This Litigation

Given the demonstrable benefits of the proposed Settlement that Class Counsel have obtained, they should be rewarded for having obtained a beneficial result in a practical and timely manner.  Under the Settlement Agreement, the Settlement Class will realize substantial and immediate benefits once the Settlement is approved.  The timeliness of class relief is particularly important where, as here, Plaintiffs' non-public personal and financial information has been breached, disseminated, and improperly used.  If litigation were to proceed, Settlement Class Members would continue to have out-of-pocket losses and be without necessary credit monitoring for an even longer period.  And they would be exposed to the attendant risks of litigation, including the uncertainties and difficulties pertaining to class certification, the legal and factual defenses that have been asserted by Michaels, the length of time necessary to see this matter through to trial, the uncertainties of the outcome of the litigation, and the fact that resolution of the class claims, whenever and however determined, would likely be submitted for appellate review.  Thus, the practical-minded approach of Class Counsel to achieve earlier benefits for the Settlement Class should also support the attorneys' fee award requested here.

### B.     The Requested Award For Attorneys' Fees Is Reasonable Under The Lodestar Method

While the application of the percentage method has become the general trend in common fund cases, courts may also factor in counsel's lodestar where a settlement provides significant

---

[8] The lodestar and expenses set forth in Class Counsel's declarations do not include the lodestar and expenses incurred by other plaintiffs' counsel other than Wolf Haldenstein.

equitable or injunctive relief that may be difficult to value. *Langendorf*, 2009 U.S. Dist. LEXIS 131289, *30 ("[a]s a result of the difficulty in making an assessment of the Settlement's value in this case, the Court will utilize the lodestar method in awarding class counsel's attorneys' fees."); *see also City of Greenville v. Syngenta Crop Prot., Inc.*, No. 3:10-cv-00188-JPG-PMF, 2012 U.S. Dist. LEXIS 151819, at *21 (S.D. Ill. Oct. 23, 2012) ("[a] fee award in this case equal to one-third of the common fund is also justified under the lodestar method."). In the present action, a significant portion of the relief provided to the proposed Settlement Class is equitable in nature, including verification of remedial and prophylactic measures Michaels has taken to confirm containment of the Compromise and to strengthen PIN Pad security for Settlement Class Members who choose to continue shopping at Michaels since the Compromise. Therefore, based upon the unique nature of this Settlement, Class Counsel's fees can be either cross-checked or directly calculated using the lodestar method of calculation. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598-99 (N.D. Ill. 2011) (acknowledging criticism of lodestar method, but employing lodestar cross-check and observing, "[w]here a settlement includes substantial affirmative relief, such relief must be considered in evaluating the overall benefit to the class.").

Class Counsel's requested fees are reasonable under the lodestar method. As explained above, Class Counsel has already performed a substantial amount of work on behalf of the Settlement Class, and substantial work remains to secure final approval of the Settlement. Even with a very modest multiplier, the proposed attorneys' fee award is proportional to the work that Class Counsel has performed to date.

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *City of Greenville*, 2012 U.S. Dist. LEXIS 151819, at *21. This base lodestar should be adjusted

upward to reflect the contingent nature of the attorney's undertaking based on the likelihood of success in obtaining a judgment or settlement measured at the time the attorney began work on the case. *See Skelton v. General Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988) (citations omitted); *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998) ("[t]he unenhanced lodestar usually accounts for the difficulty of prevailing on the merits, because it reflects the number of hours that are necessary to overcome the difficulty and the hourly rates of attorneys who are skilled enough to do so. But the unenhanced lodestar does not reflect the factual and legal merits of the claim—the fact that at the outset of the litigation, no matter how dazzling the array of legal talent or how many hours will eventually be logged, there is nonetheless the possibility of no recovery.") (internal citation omitted).

As discussed above, Class Counsel reported having spent approximately 1667.65 hours advancing these matters, which represents an aggregate lodestar of $944,606. *See* Marchese Decl., ¶ 108; Levitt Decl. ¶¶ 10,16; Vozzolo Decl. ¶ 11. All of Class Counsel's aforementioned services were reasonable and necessary to prosecute these matters and the reach the terms of the proposed Settlement as set forth in the Settlement Agreement. Moreover, the hourly rate used by Class Counsel and their legal staff are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the Chicago legal market and in those lawyers' home legal markets. Marchese Decl., ¶ 110. Thus, the requested award of fees represents a very modest multiplier of approximately 1.27, which will further be reduced by the work that remains to oversee the Settlement to its conclusion. In any case, this multiplier is certainly within the range of reasonableness considering the risk of non-recovery and the excellent result achieved. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991) (noting "[a risk] multiplier is, within the court's discretion, appropriate when counsel assume a risk of non-payment in taking a suit" and "[m]ultipliers anywhere between one and four . . . have

been approved"); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 2000 WL 204112, at *3 (N.D. Ill. Feb. 9, 2000) (awarding $91 million premium above lodestar and noting that "[an] award of more than two times the lodestar calculation is believed to be fair and just in these circumstances"). Accordingly, the requested fee award of $1,200,000 is reasonable under a lodestar analysis or lodestar cross-check and should be approved by the Court.

### C. The Requested Award For Attorneys' Fees Is Reasonable and Justified as a Matter of Public Policy

Important public policy considerations also support approval of the requested fees. In considering attorneys' fees, courts are mindful that such awards serve the dual purpose of encouraging representatives acting as "private attorneys general" to seek redress for damages to entire classes of persons and discouraging future misconduct of a similar nature. *See Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825 (2d Cir. 1970) ("Every successful suit duly rewarded encourages other suits to redress misconduct and by the same token discourages misconduct which would occasion suit."); *Perez*, 2007 U.S. Dist. LEXIS 66931, at *6 ("Plaintiffs originally brought the three consolidated cases under Florida's and California's consumer protection statutes, which establish "private attorney general" remedies. ***Attorneys' fees are typically provided in these cases regardless of the eventual monetary results, due in part to the importance that the cases serve in our society and to provide the incentive necessary to have lawyers agree to undertake them.***"). When a retailer fails to maintain reasonable or adequate PIN Pad Security practices to save on compliance costs and criminals take advantage of that retailer's improper conduct, that retailer, its customers, their financial institutions, and the public at large all suffer. Actions against retailers for failing to maintain adequate security help capture externalities and risks these retailers impose on others in

search of short-term financial savings. By awarding Class Counsel's requested attorneys' fees, the Court promotes public policy in encouraging private attorneys to bring actions that serve as greater deterrent against short-sighted retailer security failures.

## II.    Class Counsel Should Be Reimbursed For Reasonably Incurred Litigation Costs And Expenses

Courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation. *See Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993). In prosecuting these matters, Class Counsel have, to date, advanced litigation costs and expenses in the amount of $55,565.46. These costs and expenses were incurred in furtherance of the litigation for filing and PACER fees, court reporter and transcript fees, legal research fees, expert fees, mediator fees, and travel expenses related to the MDL oral argument, mediation, court hearings, and the like. These costs and expenses are itemized in the Marchese, Levitt, and Vozzolo Declarations. Class Counsel submit that these costs and expenses were reasonable and necessary to achieve the results manifested by the Settlement Agreement.

## III.   The Requested Incentive Awards To Representative Plaintiffs Are Proper

The Settlement Agreement calls for the payment of $2,500 to each of the Class Representatives as "incentive" or "special" awards. Incentive awards are common in class action litigation such as this case, and they serve to encourage class members to serve as class representatives and to reward individual efforts that they take on behalf of the class(es) they seek to represent. *See, e.g., Cook v. Niedert*, 142 F.3d at 1016 (7th Cir. 1998) (awarding $25,000 incentive award); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. at 1267-68 ($30,000 awarded from settlement fund of $10 million); *In re Domestic Air Transportation Antitrust Litigation*, 148 F.R.D. 297, 348 (N.D. Ga. 1993) ($142,500 awarded from settlement fund of $50 million); *In re Dun & Bradstreet Credit Services Customer Litigation,* 130 F.R.D. 366, 373-74

(S.D. Ohio 1990) ($215,000 awarded from settlement fund of $18 million); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 37 F.R.D. 240, 250-51 (S.D. Ohio 1991) (approving $50,000 incentive awards). Such awards compensate class representatives for actual costs in time, money and the disruption of life incurred in the prosecution of the litigation.

The requested incentive awards here are reasonable. Plaintiffs were actively involved in the litigation and devoted material time and effort to the case. Marchese Decl. ¶¶ 114, 115. These Plaintiffs, through their counsel, sought successfully to remedy a widespread wrong and have conferred valuable benefits upon their fellow Settlement Class Members. Named Plaintiffs provided a valuable service to the Settlement Class by: (a) overseeing the prosecution of the litigation; (b) consulting with counsel on a regular basis; (c) providing and reviewing a wide variety of documents related to these matters including the CACAC and Settlement Agreement; and (d) offering advice and direction at critical junctures, including the Settlement of the litigation. *Id.* Most importantly, Plaintiffs were prepared to litigate this action through trial to properly represent the Class and fight for significant class relief. *Id.* Their actions, input, and participation have conferred a significant benefit on tens of thousands of Michaels data breach victims in the Settlement Class. Furthermore, the parties negotiated this payment only *after* all substantive relief to the Class was agreed to in its principal form. Marchese Decl. ¶ 113. Therefore, the $2,500 incentive awards are entirely reasonable and appropriate and should be approved.

## **CONCLUSION**

For all of the reasons stated above and in the accompanying declarations and forthcoming motion for final approval, Class Counsel respectfully request that the Court approve the amount of $1,200,000 as attorneys' fees. Class Counsel further respectfully request that the Court award

them their reasonably incurred costs and expenses plus the requested Plaintiff incentive awards

up to an aggregate amount of $100,000.

Dated: March 22, 2013                               Respectfully submitted,

                                                    **GRANT & EISENHOFER P.A.**

                                            By: /s/  Adam J. Levitt
                                                Adam J. Levitt
                                                Edmund S. Aronowitz
                                                30 North LaSalle Street, Suite 1200
                                                Chicago, Illinois  60602
                                                Tel:  312-214-0000
                                                Fax:  312-214-0001
                                                alevitt@gelaw.com
                                                earonowitz@gelaw.com

                                                Scott A. Bursor (*pro hac vice*)
                                                Joseph I. Marchese (*pro hac vice*)
                                                **BURSOR & FISHER, P.A.**
                                                888 Seventh Avenue
                                                New York, New York  10019
                                                Tel: 212-983-9113
                                                Fax: 212-983-9163
                                                scott@bursor.com
                                                jmarchese@bursor.com

                                                Anthony Vozzolo (*pro hac vice*)
                                                Christopher Marlborough (*pro hac vice*)
                                                **FARUQI & FARUQI, LLP**
                                                369 Lexington Ave., 10th Floor
                                                New York, New York  10017
                                                Tel: 212-983-9330
                                                Fax: 212-983-9331
                                                avozzolo@faruqilaw.com
                                                cmarlborough@faruqilaw.com

                                                *Settlement Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2013, a copy of the foregoing document was filed electronically using the CM/ECF System. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. In addition, a copy of the foregoing was served on the following via electronic mail:

> David J. Disabato (ddisabato@disabatolaw.com)
> Disabato & Bouckenooghe LLC
> 8 Mansfield Court
> Mendham, New Jersey 07945
> Tel: 973-813-2525
>
> **Counsel for Plaintiff Lori Wilson**

By: /s/ Edmund S. Aronowitz
Edmund S. Aronowitz